PENTLAND et al. v. DRAVO
CORPORATION.

No. 8939.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 9, 1945.

Decided Nov. 27, 1945.

Austin L. Staley, of Pittsburgh, Pa. (A. E. Kountz, William A. Meyer, and Kountz, Fry, Staley & Meyer, all of Pittsburgh, Pa., on the brief), for appellants.

Francis W. Sullivan, of Philadelphia, Pa., for amicus curiae.

Earl F. Reed, of Pittsburgh, Pa. (Charles F. Uhl, U. S. Atty., John E. Laughlin, Jr., J. Roland Johnston, and Thorp, Bostwick, Reed & Armstrong, all of Pittsburgh, Pa., on the brief), for appellee.

Before ALBERT LEE STEPHENS, GOODRICH, and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This case presents an interesting question growing out of the language used in § 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 216(b). Certain named plaintiffs brought an action against the defendant to recover unpaid overtime compensation, liquidated damages and counsel fees, as provided in the statute. They said they were members of a class of about five hundred employees (which class was clarified by amendment) and that they sued on behalf of themselves and as representatives of other employees and former em-

ployees similarly situated. They alleged a common question of law, a common question of fact, and sought common relief but by separate judgments. The defendant's answer on the merits does not concern us here, for the point before us in this appeal comes through a motion which it made for judgment on the pleadings against the plaintiff as representative of any persons in the described class who had not of record intervened as parties plaintiff. This motion, after hearing, was granted by the court. D.C.W.D.Pa.1945, 4 F.R.D. 350. The plaintiffs appeal.

The problem producing language is the following from § 16: "Action to recover such liability may be maintained * * * by any one or more employees for * * * themselves and other employees similarly situated * * *."

"Other employees similarly situated" are manifestly the words whose legal effect must be determined. Do they create what we already have under the federal rules as a true class suit, a hybrid class suit, or a spurious class suit? We have struggled with these distinctions on previous occasions. See Pennsylvania Co. etc. v. Deckert, 3 Cir., 1941, 123 F.2d 979. It may be admitted that the terminology shocks the aesthetic sense and the succession of adjectives before the noun shows the poverty of imagination in choice of terms characteristic of the legal profession. But back of the unedifying nomenclature there is substance. If our categories are carefully chosen it makes a great difference into which one our facts fall. It matters here.

With hybrid class suits we are not concerned. Such a suit has to do with individual plaintiffs and a claim to a common fund. See the discussion in the Deckert case, supra.

The District Court thought the instant suit was a spurious class action.[1] Moore (2 Federal Practice 2241) describes a spurious class suit as a "permissive joinder device. The presence of numerous persons interested in a common question of law or fact warrants its use by persons desiring to clean up a litigious situation." Moore gives as an instance a fire negligently started by a railroad which inflicts widespread damage upon many property owners. Their only common interest is to get money from the tortfeasor. The latter's obligation certainly is a separate matter as

to each plaintiff. But if the lawsuit does not grow too bulky, there may be economy of time and effort hearing all the claims in the same proceeding.

A true class action is described in the Restatement, Judgments, § 86 (b) as "an illustration of a situation where it is not feasible for all persons whose interests may be affected by an action to be made parties to it. It was invented by equity for situations in which the number of persons having substantially identical interests in the subject matter or litigation is so great that it is impracticable to join all of them as parties, in accordance with the usual rules of procedure, and in which an issue is raised which is common to all of such persons." A typical case to illustrate the general situation covered is that of a taxpayer who sues county tax assessors on behalf of himself and all other taxpayers alleging that his assessment is invalid because a wrong method of assessment was used.

Some of the consequences of a class action are very important. Section 86, Restatement, Judgments, states the effect on all parties in the class:

"A person who is one of a class of persons on whose account action is properly brought or defended in a representative action or defense is bound by and entitled to the benefits of the rules of res judicata with reference to the subject matter of the action."

The learned district judge was in error when he said, in his opinion in this case it was "too astonishing to be accepted" that one unwilling to appear in a suit might be bound by the judgment therein. That is just what does happen in case of a true class action.

■ When do we have a "real" or "true" or "genuine" class action, as distinguished from those described by other adjectives? Moore (2 Federal Practice 2236) gives an explicit answer. He says this action is one wherein, "but for the class action device, the joinder of all interested persons would be essential. This would be in cases where the right to be enforced was joint, common or derivative."

If we keep this language in mind and think for a moment about the rights an employee has against his employer for violation of the Fair Labor Standards Act, we will find the answer to our problem. If

---

[1] Spurious and Hybrid were put in the alternative however.

an employer who is subject to the Act does not pay an employee who comes within its protection, wages in accordance with its terms, the employee has a claim against his employer. It consists of the unpaid wages, liquidated damages, attorney's fee. But because an employer fails to obey the law as to employee A, it does not follow that he has not obeyed it as to employees B, C or D. B may not be engaged in interstate commerce or the production of goods for commerce, while A may. Employee C may be a salaried worker or a supervisor who does not come under the Act. Employee D may have been paid the statutory minimum and not have worked any overtime at all.

 A does not need any class action device either under Federal Rule 23, 28 U.S.C.A. following section 723c, or § 16 of the statute to let him sue his employer to enforce rights under the Act. His claim is individual. He may or may not have common questions of law or fact with fellow employees in a claim against the employer. If he should lose his lawsuit, it certainly would be a startling result to find that every fellow employee was bound by the estoppel of that judgment when he came to sue the employer. The conclusion is irresistible that no true class suit is either possible or intended to be created by the quoted language of § 16 of the Act.

A decision to the same effect by a district court has been said to vitiate the class suit provision of the statute.[2] Obviously we do not think so, or we would not be writing as we are.

 We think to classify the proceeding as a spurious class suit, as the District Court did in the instant case is correct and gives two effects to the language in § 16 which it is very likely the Congress had in mind. One is that employees, if they wish, can join in their litigation so that no one of them need stand alone in doing something likely to incur the displeasure of an employer. It brings something of the strength of collective bargaining to a collective lawsuit.

The other and stronger point becomes apparent when one looks at the statute and then goes back to Moore again. The rights under this Act are not enforcible alone in federal courts but in "any court of competent jurisdiction." Spurious class actions are of modern development; in some states they have been refused when they involved tort claims. State practice varies widely.[3] Congress, we take it, was giving rights here under a federal statute which are enforcible in any court in the land. To what extent the language used subordinates state practice we need not decide. It is quite apparent that Congress, in providing for suit under the Act in all courts, advisedly did not assume that practice in all those courts would be that under the new federal rules. Had it limited the Act to federal court enforcement, the language of § 16 might not have been necessary, assuming, of course, that judges in federal courts thoroughly understand the new federal rules and apply them correctly at all times. We think the meaning we give to the language carries out the purpose of the Act.

The view expressed here is, in general, that of the courts which have considered the question. Language varies, of course, for we are blazing new trails here and signs do not always mean the same to us even when we agree upon the direction in which they point the path. The decisions line up as follows:

We find three groups. The first two are alike in that they agree with each other and with us in their conclusion as to the nature of § 16(b). They differ from each other in form. The first group attains an expression much closer to our own in that it draws the distinction between a true class action and the form which we have here. The second group labels the suit provided for in § 16(b) a class action but indicates by the body of the opinion that a spurious class action is actually what is meant. The third group treats the section as though it were a true class action.

Within the first group there is considerable variation in method of drawing the distinction between what is being dealt with by the court and a true class action. In Smith et al. v. Stark Trucking Inc., D.C.N.D., Ohio 1943, 53 F.Supp. 826, 828, the court recognizes the problem but declines to discuss the question of true class suit or spurious,[4] and merely asks what

2 (1942) 55 Harv.L.Rev. 688, commentary upon Shain v. Armour & Co., W.D. D.C.Ky.1941, 40 F.Supp. 488.

3 2 Moore, Federal Practice 2241 et seq.

4 "It logically follows that in order to decide the merits of the motion to strike, it would be purposeless to discuss the questions whether this is a true class action as

the Act laid down as a pattern.[5] In answering this they are at one with us.[6] Lofther et al. v. First Nat. Bank of Chicago, D.C.N.D.Ill., 1941, 45 F.Supp. 986, 988, not only recognizes the distinction but stresses it [7] as well in arriving at the same conclusion as to the scope of § 16(b).[8] Shain v. Armour & Co., D.C.W.D.Ky., 1941, 40 F.Supp. 488 spearheads a group of cases some of which arise in the second group. It is often cited by other courts and serves as the sole or principal sustaining authority in two other decisions on the same question written later in the same year for the same court by the same district judge. These other two are: Archer v. Cornillaud, D.C.W.D.Ky.,1941, 41 F.Supp. 435 and Gordon v. Paducah Ice Mfg. Co., D.C.W.D.Ky.,1941, 41 F. Supp. 980. The Shain decision, foundation of the trio, somewhat in the manner of the Smith case refuses to discuss the distinction between true and spurious class suits but comes out exactly the same door as if it had done so by clearly recognizing that employees' grievances vary though they may be similar.[9] Its delineation of the real purpose of the statute shows it to be in accord with our conclusion.[10] Another case frequently cited is Saxton v. W. S. Askew Co., D.C.N.D.Ga.1940, 35 F. Supp. 519, 520, which puts the matter obliquely by saying that the Act was not intended to enlarge class actions but reaches the same result as that we have indicated.[11]

The second group of cases talks about class action as though they had a true class suit in mind. Their actions in delimiting the areas of the statute indicate otherwise. Thus the Supreme Court of Tennessee in Hunt v. National Linen Service Corporation, 1941, 178 Tenn. 262, 157 S.W.2d 608 not only calls suit under the Act a class action but concludes that the majority of cases are with it in such expression.[12] But it quickly indicates that other employees are not necessarily bound, bringing the matter to the level of a spurious class action.[13] In Cummings v. Gilpin, 1943, 6 Labor Cases par. 61483 the same

---

prescribed in Rule 23 of the Rules of Civil Procedure, or into which one of the subsections of the Rule these proceedings fall if any; or whether this is a true class suit or a spurious class action."

[5] "The question for decision is: Does the instant suit follow the pattern delineated in the Act itself?"

[6] "It is the definite intent and purpose of the Act to prevent a multiplicity of suits by permitting, but not compelling, all employees similarly situated to have their cases heard in one action."

[7] "I believe that Congress did not intend by Section 16(b) of the Fair Labor Standards Act of 1938 to permit a plaintiff or plaintiffs to maintain a true class action on behalf of all others said to be similarly situated, but rather intended to permit a joinder of such suits by employees 'similarly situated' and that any employee or employees might authorize or designate a representative or agent to maintain such actions in their behalf."

[8] "Each such individual employee, if he feels himself aggrieved, has a right to bring his suit for relief on his own behalf, or he may join with others 'similarly situated,' or authorize another employee 'similarly situated' to represent him in a suit brought on his behalf, or he may intervene in a suit already instituted by an employee 'similarly situated.' "

[9] "Employees may be similarly situated without being identically situated." [40 F.Supp. 490.]

[10] "Such affirmative action on their part is necessary in order to show knowledge of the litigation in their behalf, their willingness to participate therein and to be so represented, and to bind them by the final judgment. This prevents the necessity of separate actions where the questions of law and facts are the same, which would be necessary in the absence of the statutory provision under consideration, and meets the due process of law requirements for class actions. Such seems to be the real purpose of the statute, regardless of the academic question of whether or not it is a true class suit."

[11] "It seems a fair construction of the terms of the Act with reference to the collection of unpaid compensation, that it was not the intention of Congress to broaden any of the procedural and substantive rules of class actions, and it would seem that where under the Act a suit is filed by one or more employees for themselves and others similarly situated, showing violation of the statute, but different and divergent rights to plaintiffs as a result thereof, the action is not a class action in any extent greater than permits any other employee similarly situated to intervene therein, setting up his specific claim."

[12] "The great majority of these opinions sustain the maintenance of such a suit as a class action." [178 Tenn. 262, 157 S. W.2d 609.]

[13] "It would appear from the plain language of the Act that, as in a general credi-

court had opportunity to consider the same problem anew; it rested on its previous decision in Hunt v. National Linen Service Corporation. The same disparity between label and substance is found in many of the federal courts. In Tolliver v. Cudahy Packing Co., D.C.E.D.,Tenn., 1941, 39 F.Supp. 337 despite clear labeling the other way,[14] the use of interrogatories or other method to determine names and amounts due the other employees, thinks in terms of permissive joinder and spurious class action.[15] Townsend et al. v. Boston & M. R. R. and Townsend et al. v. Palmer et al., D.C.D.Mass.,1940, 35 F. Supp. 938, arising even earlier, make the same suggested use of interrogatories or other method.[16] The case of Brooks et al. v. Southern Dairies, D.C.S.D.Fla.,1941, 38 F.Supp. 588, often cited, concurs in the reasoning of the Saxton case of the first group, and indicates even more clearly the gap between its label[17] and its conclusion.[18] It will be noted from our discussion above, however, that this Court does not in any way agree with the reason given for that conclusion in the district court opinion.[19] Following along the same line of form[20] varying from content[21] is McReynolds et al. v. Louisville Taxicab & Transfer Co., Inc., D.C.W.D.Ky.1942, 5 F.R.D. 61, which cites the Shain decision of the first group, written by the same judge. No matter how explicitly they call it a class action, these cases as does Coleman v. Springsely Realty Corp., D.C.S.D. N.Y.1943,* show that all think in terms of permissive joinder of parties[22] and thus classify themselves as spurious class actions.

The third group of cases is smaller in number. It varies from an opinion such as Cissell v. Great Atlantic & Pacific Tea Co., D.C.W.D.Ky.,1941, 37 F.Supp. 913 which was decided by the same district judge as the Shain case of group one and therefore only reflects a viewpoint later changed, to an opinion such as Clint v. Franklin Bargain House, Com.Pl., Lucas County 1941, 6 Ohio Supp. 299, 301, which

---

tors' bill this action may be begun by and for one employee primarily, but may include within its scope a claim for all other employees similarly situated. This would not necessarily mean that these other employees were parties to the litigation. They are free to join in it or not, as they see fit."

[14] "This suit amounts to a class action." [39 F.Supp. 339.]

[15] "If there is judgment for the named plaintiff and all others similarly situated, then the names and amounts due the employes similarly situated can be ascertained by interrogatories or some other proper method. Any dispute on these questions can then be determined."

[16] "This motion in substance is that all persons who are alleged in the complaint to be similarly situated with James H. Conover be made parties hereto. I can see no reason why at this stage of the proceedings such a motion should be allowed. The action is brought by an agent of an employee as distinguished from an employee himself, and at some future time the names of all persons who are to benefit by this action can be ascertained through the medium of interrogatories or through some other medium. They are not indispensable parties now." [35 F.Supp. 940.]

[17] The Court rules:

"That a class suit can be maintained under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. * * *."

[18] "However, the Court is of the opinion that no judgment could be entered in favor of any employee against such employer, under the provisions of the said Act, for any specific sum of money unless each employee was either (a) a party to the suit, or (b) had expressly designated some one to represent him in said suit, or (c) had intervened in said suit."

[19] In the course of the opinion, the following language was used: "I deem it beyond the power of Congress to force one to become a plaintiff against his will or without his consent, or to select for him an agent or attorney to represent him."

[20] "Such a class action is specially provided for by the Act."

[21] "If the evidence does not sustain the allegation that the other plaintiffs are similarly situated to McReynolds, they will be dismissed from this proceeding without it being necessary to consider the question of amount of recovery."

* No opinion for publication.

[22] "The claim to be a representative and a class action is not ground for dismissal of the complaint. Defendant on motion, may compel the revelation of plaintiff's authority to represent any interested party and also on motion, may obtain a statement of all of the persons claimed to be included in the class action which he says he represents."

is squarely contra [23] to our view and remains so.

Appellate federal courts have not had the problem squarely before them in the sense that this Court now has or many of the district courts had. Culver et al. v. Bell & Loffland Inc., 9 Cir., 1944, 146 F.2d 29 overruled a district court refusal to permit amendment of complaint, brought in behalf of plaintiff and those similarly situated, so as to include 38 of these by name. The Court adds that "representative suits" should be "liberally administered." We conclude that this analysis of the cases so far decided shows the overwhelming weight of decision supports the conclusion here reached. As already indicated, there is divergence in the reasons assigned for the result.

Upon one point, however, we disagree with the learned District Judge. We think the granting of the defendant's motion for judgment was premature. The fact that the suit had been started six months before is not, to our minds, a sufficient reason for precluding other persons who care to join from coming in later. It is arguable, though we do not now decide, that the statutory language already discussed makes intervention a matter of right under Rule 24(a). It is arguable, as amici have argued in this case, that the proper procedure is to keep the case open until time of final judgment, and determine then whether the judgment shall be binding only upon those who have joined or whether to bring in all others similarly situated by supplementary proceedings. Those questions have not been thoroughly explored in the argument of this case and we do not want to preclude further consideration by a premature decision on them now. All we say now is that the judgment on the pleadings as to unnamed parties should not have been granted merely because it was convenient for the defendant to have the case closed as to parties at this stage in the proceedings.

Reversed.

---

[23] "I find nothing either in the Act nor in the law of Ohio that makes the problem easier if the plaintiff were to name those on whose behalf he acts, and no authority for permitting other employes to intervene, and so confine recovery to those joining in the action."

"Argument is made that the term 'similarly situated' refers to employes of the same class or in the same department as the plaintiff. The Court is of the opinion, as above indicated, that taking the purpose of the Act into consideration it means all employes who have not been paid according to the provisions of the Act."