**SYSTEM FEDERATION NO. 91, RY. EMPLOYES' DEPT., AMERICAN FEDERATION OF LABOR v. REED et al.**

**LOUISVILLE & N. R. CO. v. REED et al.**

Nos. 10930, 10931.

United States Court of Appeals
Sixth Circuit.

March 13, 1950.

**992**

Richard R. Lyman, Toledo, Ohio, Robert E. Hogan, Louisville, Ky., Clarence M. Mulholland, on brief, for System Federation No. 91, Ry. Employes' Dept., etc., and others.

C. S. Landrum, Lexington, Ky., H. T. Lively, Louisville, Ky., on brief, for Louisville & N. R. Co.

Marshall Eldred, Louisville, Ky., Eli H. Brown, III, on brief, Brown, Greenebaum & Eldred, Louisville, Ky., of counsel, for C. Pierce Reed and Brown & Eldred.

Before SIMONS, ALLEN and McALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

Appellants, a railroad company and a union, appeal from a judgment holding them in contempt of court for violation of an injunction which prohibited them from discriminating against appellees through denying them and the classes represented by them, promotion to preferred jobs and protection of their seniority. The above appeals are from the same judgment, and will be considered as one case.

The following is the background of the present controversy: On July 16, 1945, O. V. Wright and twenty-seven others (not parties to this suit) brought an action against the same railroad and union that are appellants in this case. The allegations of one of the individual employees are characteristic of those made by all. They set forth that he was employed by the railroad as a machinist helper in the machinist craft; that the union was the exclusive bargaining agent and representative of such machinist craft; that he was not a member of the union; that he was demoted from work as an upgraded worker for the reason that he was not a member of the union; that other helpers who were junior to him in point of service were upgraded to perform such work, not because of better qualifications but merely because they were members of the union. He further set forth that he brought the suit on behalf of the class that he represented, namely, all the members of the craft of machinists employed by the railroad, whose rights and privileges had been denied or abridged by the railroad and union, either by separate acts of discrimination or by acts of discrimination in concert between the railroad and union, and for the sole reason that the said employees did not join or retain their membership in the union; and that the employees suffering such discrimination were so numerous as to make it impracticable to bring them all before the court, but that common relief was sought for all.

The complaint then asked for a declaratory judgment decreeing that workers who were not members of the union were entitled to promotion to preferred jobs, or jobs in a higher classification, paying a higher rate of pay, and to proper protection

of their seniority based upon their ability, seniority, and willingness to perform their duties, without regard to whether they joined or retained their membership in the union; that the court further decree that the railroad, under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., was under the duty to treat fairly, impartially, and without discrimination all of its employees, and to assure all of them the right to promotion to preferred jobs, to proper protection of their seniority, and to receive the benefits of such rights based upon ability, seniority, and willingness to perform, without regard to whether they were members of the union. The complaint asked that an injunction issue against the railroad and the union, perpetually restraining and enjoining them from requiring, as a condition to receiving promotion, protection of seniority, and any and all rights and benefits which might arise out of an individual contract of employment between the railroad and any of its employees, that plaintiff or the classes represented by him join or retain their membership in the union; and perpetually restraining the railroad and union from denying to the said parties promotions, protection of seniority, or benefits of contracts of employment, for the reason that they were not members of the union; and for a judgment awarding plaintiffs, jointly and severally, a judgment in the amount of $5,000.

Thereafter, the union and the railroad consented to the entry of a declaratory judgment and injunction. The judgment declared that the union and the railroad, in accordance with the provisions of the Railway Labor Act and the duly adopted bargaining agreements between the railroad and the union, were under the obligation to represent and treat fairly and impartially all members of the craft of machinists without discrimination based on membership or nonmembership in any union, and without regard to whether the employees were members of the union or retained their membership therein. The judgment further set forth that in accordance with the foregoing, the railroad was under a duty to refrain from such discrimination and that the employees of the railroad were entitled to the rights of promotion to preferred jobs and to the proper protection of their seniority, as provided in bargaining agreements between the union and the railroad then in effect or thereafter to be in effect, in accordance with the Railway Labor Act, regardless of any union membership.

Following the foregoing declaratory portion of the judgment, it proceeded to enjoin the railroad and the union from requiring plaintiffs or the classes represented by them to join or retain their membership in the union as a condition to receiving promotion, proper protection of seniority, or any rights or benefits which might arise out of or be in accordance with the regularly adopted bargaining agreements in effect between the railroad and the union, or that might thereafter be in effect, in accordance with the Railway Labor Act. It also enjoined defendants from denying to the plaintiffs, or the classes represented by them, promotion to preferred jobs, and protection of their seniority, on grounds of membership or nonmembership in the union; and the railroad and the union were further enjoined, in the application of the provisions of the regularly adopted bargaining agreements in effect between the railroad and the union, or that might thereafter be in effect, from discriminating against the plaintiffs and the classes represented by them, by reason of, or on account of, the refusal of any of the employees to join or retain their membership in the union. The district court, in its decree, retained control of the action for the purpose of entering such further orders as might be deemed necessary or proper.

The above judgment and injunction were in effect when, on November 15, 1946, appellee Reed commenced the proceedings in this case by the filing of his intervening petition in the same action in which the injunction had been issued. Reed, in his petition, asked the district court to adjudge the railroad and the union to be in contempt of court for the violation of the injunction theretofore issued, and prayed that the defendants be punished by being required to pay for his benefit the sum of $65.00 per month from January 13, 1946,

until the date of hearing, the amount of the loss he had suffered by reason of the violation of the injunction, as well as reasonable attorney fees and such additional sums as might be adjudged by the court as necessary to purge them of their contempt.

The basis of Reed's claim that the appellants had violated the injunction was as follows: Reed had been first employed by the railroad in 1923 as a machinist helper. He retained that status until February 7, 1944, when he was upgraded to the status of a machinist, and received the prevailing rate of pay for machinists. Under a contract, executed in 1943 between the railroad and the union, it was provided that when helpers were "upgraded" to mechanics, they would receive a mechanic's rate of pay, and that they should be selected by the management of the railroad and the committee of the union, with consideration being given of their seniority ranking. This contract between the railroad and the union, in effect when Reed was upgraded, also set forth the conditions of demotion from the grade when it became necessary to reduce the force. It provided, in so far as here relevant, that when it was necessary to reduce the force, the railroad and the union "will approve the men to be demoted, *with consideration being given them in seniority order.*" (Emphasis supplied.)

Reed, after he was upgraded, continued to draw the rate of pay for a machinist until January 13, 1946, when he was demoted. Just ten days before his demotion, the union and the railroad entered into an agreement which stipulated that machinist helpers who had been promoted in accordance with the agreement of 1943 (which provided for demotion with consideration being given to their seniority) should thereafter be demoted in the reverse order in which they were promoted. Thirteen machinist helpers junior to Reed on the seniority list had been promoted to the status of machinist before Reed was promoted. He, however, did not, and is not, complaining of that fact. When Reed was upgraded, the contract provisions in effect between the railroad and the union provided that in case of demotion of workers, they would be demoted with consideration given them of their seniority. Under the provisions of the contract then in effect, Reed outranked the thirteen other workers and would, according to seniority, be the last man in number among them to be demoted. The thirteen machinist helpers were members of the union and retained their membership therein. Reed discontinued his membership in the union. The contract between the union and the railroad was thereafter changed so that Reed, in spite of his seniority over the other thirteen helpers, was the first to be demoted. This was, of course, because the new contract provided that demotion, instead of being made with consideration of seniority, should be in reverse order of the promotion of the employees. Reed had happened to be the last helper upgraded—an entirely irrelevant consideration for demotion in this case. When Reed was upgraded, he was a member of the union; at the time he was demoted, he had given up his membership in the union. According to the evidence, there was no question that Reed's qualifications to perform the upgraded work were equal or superior to those of the thirteen other helpers, junior to him, who were retained in the status of machinists.

At the time, then, that the contract between the union and the railroad was changed to provide for demotion in reverse order of promotion instead of according to seniority, and at the time of Reed's demotion, there was in effect the injunction of the district court enjoining the railroad and the union from requiring machinist helpers to join or retain their membership in the union as a condition to receiving promotion or proper protection of their seniority, and enjoining them from denying such employees the protection of their seniority on grounds of nonmembership in the union.

The district court found that appellants had discriminated against Reed on account of his nonmembership in the union, and that they were guilty of contempt for violation of the injunction. In addition, the court awarded a compensatory fine for the

benefit of Reed, together with a moderate allowance for attorney fees. The union and the railroad appealed.

Appellants claim that the original action brought by Wright, in which the injunctive decree was entered, was not a true class action, because the rights thereby sought to be enforced were of a several, rather than a joint, character; and that, consequently, the decree entered therein was not *res adjudicata* of the rights of members of the class who were not actually parties to the action. Appellants further contend that Reed had no right, after decree, to intervene in a spurious class action in order to receive the benefits of the decree to which he was not bound, citing, in support of the rule contended for, Shipley v. Pittsburgh & L. E. R. Co., D.C., 70 F.Supp. 870; 2 Moore's Federal Practice, page 2241; Lockwood v. Hercules Powder Co., D.C. Mo., 7 F.R.D. 24; Shaine v. Armour & Co., D.C., 40 F.Supp. 488.

The issues on this aspect of the case, therefore, are: (1) whether the original class action was a true class action; and (2) whether Reed had a right to intervene after decree in that action. This brings us to the consideration of the Federal Rule applicable to class actions.

Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C.A., provides as follows:

*"Class Actions.*

"(a) REPRESENTATION. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

■ The class suit was an invention of equity mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights, nor grant them immunity from their equitable wrongs. Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741; United Mine Workers of America v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762.

■ The Advisory Committee, which was appointed by the Supreme Court to assist in the formulation of the rules, stated, in a note relative to subdivision (a) of Rule 23, that it was a substantial restatement of Equity Rule 38 (Representative of Class), as that rule had been construed. According to Dean Charles E. Clark, now Judge Clark of the United States Court of Appeals for the Second Circuit, formerly Reporter to the Committee, Rule 23 was an attempt at clarification of an ancient rule of equity, the limits of which had always been doubtful. Federal Rules of Civil Procedure and Proceedings of the American Bar Association Institute, Cleveland 1938, page 263. The federal rules have in no wise limited or restricted the right to bring class suits in proper cases, as was previously provided for by the former equity rule. Tunstall v. Brotherhood of Locomotive Firemen and Enginemen et al., 4 Cir., 148 F.2d 403.

Former Equity Rule 38 provided: "When the question is one of common or general interest to many persons constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole." In Supreme Tribe of Ben Hur v. Cauble et al., 255 U.S. 356, 41 S.Ct. 338, 342, 65 L.Ed. 673, the Supreme Court had occasion to apply Equity Rule 38 in a case involving a class suit and the conclusiveness of a judgment entered therein. In that case, an action was brought against a fraternal benefit association and its officers by some

members of a class of its beneficiaries, in behalf of all of the members of such class. The class was so numerous that it would have been impracticable to join all of them as parties. The suit was brought to determine the rights of such beneficiaries, as a class, respecting the disposition and control of trust funds held by the association. It was held that the district court had jurisdiction where diversity of citizenship existed between the parties, complainant and defendant, and that the decree would bind all members of the class, including those not parties. The Supreme Court held that those plaintiffs, not named parties, were members of the class represented, and that their rights were duly represented by those before the court. The court said: "If the federal courts are to have the jurisdiction in class suits to which they are obviously entitled, the decree when rendered must bind all of the class properly represented. The parties and the subject-matter are within the court's jurisdiction. It is impossible to name all of the class as parties, where, as here, its membership is too numerous to bring into court. The subject-matter included the control and disposition of the funds of a beneficial organization, and was properly cognizable in a court of equity. The parties bringing the suit truly represented the interested class. If the decree is to be effective and conflicting judgments are to be avoided, all of the class must be concluded by the decree."

The foregoing gives some indication of the background, development, and adoption of Rule 23(a) and the construction that was intended to be given it. In Pentland et al. v. Dravo Corp., 3 Cir., 152 F.2d 851, Judge Goodrich reviewed the types of class actions provided for by Rule 23(a) and concluded, in agreement with Professor Moore, (2 Federal Practice, Section 2236,) that a true or genuine class action under the rule is one where the right to be enforced is joint, common, or derivative, Rule 23(a) (1); that where the rights to be enforced are several, the class actions are spurious or hybrid; and that only in a true class action is the decree conclusive upon the class—res adjudicata.

Much confusion has been created by the use of the nomenclature applied to class actions as true, spurious, or hybrid. "The task of pigeonholing operative facts into one of the three categories as of 'true,' 'hybrid,' or 'spurious' suit has baffled both courts and commentators." See 46 Columbia L.Rev. 822. Analysis of class actions as true, spurious, and hybrid, has been criticized as "traditional but useless." Ibid. 888. Moreover, the classification, in Rule 23(a), of the rights to be enforced as common and joint, or several, gives rise to other difficulties. It may not always be a simple problem to tell when a right is common or when several. See Lesar, Class Suits and the Federal Rules, 22 Minn.L. Rev. 34. See also Saxton v. W. S. Askew Co., D.C., 35 F.Supp. 519; Richardson v. Kelly, 144 Tex. 497, 191 S.W.2d 857. Whether there should be a distinction between suits involving plaintiff classes and defendant classes has likewise been suggested. 46 Col.L.Rev. 827. The question as to when the decree is *res adjudicata* upon members of a class represented but not appearing in the action presents further difficulties. In its first draft, the Advisory Committee on the Rules apparently attempted to state the effects of such judgments in the various classifications of the representative actions set forth in Rule 23(a) (1), (2), and (3); but it was finally decided that that was not the province of the committee and it, therefore, put in no provision of that kind. Federal Rules of Civil Procedure and Proceedings of the American Bar Association Institute, Cleveland 1938, page 264.

■ Although related to the matter under consideration, few of the problems and difficulties mentioned in the foregoing discussion directly confront us in this case. One of the allegations of the original complaint in the class suit brought by Wright sets forth that "the rights of said employes and of this plaintiff are several, but said rights are affected by a common question of fact, and common relief is sought for all." This would indicate a claim based upon a right of a several character; but that was not the substance of the complaint,

and it is the substance which controls. A class action was invented for situations in which the number of persons having *substantially* identical interests in the subject matter or litigation is so great that it is impracticable to join them all as parties, in accordance with the usual rules of procedure, and in which an issue is raised which is common to all of such persons. Restatement of the Law, Judgments, Section 86. The substance of the complaint in the prior class action showed that it was brought for a declaratory judgment of the rights of the class of employees represented by plaintiffs, to impartial treatment, proper protection of seniority, and to the benefits of such rights based on ability, seniority, and willingness to perform such service without discrimination on account of membership or nonmembership in the union; and for an injunction against violation of such rights. Certainly, under such circumstances, the "character of the right sought to be enforced for * * * the (plaintiff) class, is * * * joint, or common," within the clear intendment of Rule 23(a) (1).

It is true that a single paragraph of the prayer for relief in the class action asked: "6. For a judgment awarding each of the plaintiffs judgment against all of the defendants, jointly and severally, in the amount of $5,000.00." If the question, whether the right to be enforced by this claim of damages was several in character, were the sole question before us, we would be called upon to determine whether the representative action brought was a true class suit. Thus, in Weeks et al. v. Bareco Oil Co. et al., 7 Cir., 125 F.2d 84, 88, it was held that Rule 23 "should be construed to permit a class suit where several persons jointly act to the injury of many persons so numerous that their voluntarily, unanimously joining in a suit is concededly improbable and impracticable. Under such circumstances, injured parties who are so minded, may present the grievance to a court on behalf of all, and the remaining members of the class may join as they see fit." See also Tunstall v. Brotherhood of Locomotive Firemen & Enginemen et al., 4 Cir., 148 F.2d 403.

In Montgomery Ward & Co., Inc. v. Langer et al., 8 Cir., 168 F.2d 182, 187, it was said: "By Rule 23 the Supreme Court has extended the use of the class action device to the entire field of federal civil litigation by making it applicable to all civil actions. The usefulness of the device in its new environment will depend largely upon the attitude of the courts. If the device is to be loaded down with arbitrary and technical restrictions, it will serve no very useful purpose in the enlarged field. * * * Like most procedural devices, its usefulness is susceptible to being nibbled away by those who regard it as an unwelcome stranger in an unsuitable environment." As observed in Weeks et al. v. Bareco Oil Co. et al., supra, "The history of class suit litigation, its development, over a century of growth, the origin and status of present Rule 23 of the Federal Rules of Civil Procedure, are all persuasive of the necessity of a liberal construction of this Rule 23, and its application to this class of litigation."

In this case, the judgment, including its injunctive provisions, of which appellee sought to avail himself by his petition to intervene, was not concerned with damages or with rights of a several character. The judgment, which was entered with the consent of appellants, was based upon the joint rights of the named plaintiffs and those belonging to the class represented by them, declaring such rights, and enjoining violation of them. The suit in which the judgment was entered was certainly, in substance, a true class suit, regardless of an allegation in the complaint that one of the rights sought to be enforced was several in character, upon which, it is to be emphasized, no relief was given. It was not feasible for all the persons whose interest might be affected by the action to be made parties to it. As heretofore mentioned, the class suit was invented for situations in which the number of persons having substantially identical interests in the subject matter or litigation was so great that it was impracticable to join them under the usual rules, and in which an issue was raised which was common to all such persons. See Pentland et

al. v. Dravo Corp., 3 Cir., 152 F.2d 851; Shipley et al. v. Pittsburgh & L. E. R. Co., D.C., 70 F.Supp. 870; Restatement of the Law, Section 86. The decree in such a class suit is binding upon all members of the class represented.

We see no reason why the judgment in the class action, here under discussion, should not be considered as a judgment in a true class action and *res adjudicata* of the rights of all of the members of the class represented by the parties plaintiff therein.

The foregoing conclusion brings us to the question whether appellee had the right to intervene. Rule 24 provides for intervention.[1] It would seem that in this case there could be no question as to the right of permissive intervention. See Brotherhood of Locomotive Engineers et al. v. Chicago, M., St. Paul & P. R. Co. et al., D.C., 34 F.Supp. 594. As to intervention of right, whether or not section (a) (2) of the rule is applicable, it is to be noted that in Missouri-Kansas Pipe Line Co. v. United States et al., 312 U.S. 502, 665, 61 S.Ct. 666, 667, 85 L.Ed. 975, it was observed that Rule 24(a) is not a complete inventory of interventions allowable of right. In that case, the foundation of the intervention sought was a consent decree, and it was held that the intervention should be allowed as a matter of right. The court said: "All of these arguments misconceive the basis of the right now asserted. *Its foundation is the consent decree.* We are not here dealing with a *conventional form of intervention,* whereby an appeal is made to the court's good sense to allow persons having a common interest with the formal parties to enforce the common interest with their individual emphasis. Plainly enough, the circumstances under which interested outsiders should be allowed to become participants in a litigation is, barring very special circumstances, a matter for the *nisi prius* court. But where the enforcement of a public law also demands distinct safeguarding of private interests by giving them a formal status in the decree, the power to enforce rights thus sanctioned is not left to the public authorities nor put in the keeping of the district court's discretion." (Emphasis supplied.)

In this case, the foundation of Reed's right to intervene is the consent decree and injunction protecting the members of his class from discrimination and enjoining the violation of their seniority rights. It was not a conventional form of intervention; Reed, as a member of the class represented, had a right to intervene to secure the benefits of such decree.

The district court found, among other matters, that, in effect, through the negotiation of the January 3, 1946 agreement between the union and the railroad, the evils in upgrading and demotion complained of in the original petition, and on account of which the agreed decree of injunction was entered, were perpetrated; that immediately following the execution of the January 3 agreement, Reed was downgraded, and a few weeks later, the agreement was rescinded; that the wrong to Reed had been done, and nothing was done to restore his status as a machinist nor to give consideration to his seniority over the thirteen men who had been left upgraded but who were junior to Reed.

On a review of the record, we are of the opinion that there was *substantial* evidence from which the district court could draw reasonable inferences that the union and railroad discriminated against

---

1. "*Rule 24. Intervention.*
    "(a) INTERVENTION OF RIGHT. Upon timely application anyone shall be permitted to intervene in an action: * * (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; * * *
    "(b) PERMISSIVE INTERVENTION.

Upon timely application anyone may be permitted to intervene in an action: * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Reed in demoting him out of his seniority order from the status of machinist; and that the purpose of such discrimination was to prefer union to nonunion employees. Such discrimination was disobedience of the command of the court and violation of the injunction entered in the original suit.

Appellants contend that Reed, as a member of the class represented by plaintiffs in the original action, was estopped to intervene because of a motion filed by the attorneys for such plaintiffs to dismiss appellants' application for a construction of the injunction, resulting in the dismissal of such application. Reed was not a party to the litigation when the motion to dismiss was filed, or prior to that time. Appellants had violated the injunction before they asked for a declaratory judgment construing its terms. The motion to dismiss appellants' application for construction of the injunction, and its consequent dismissal, did not estop Reed from later intervening in the original action to seek punishment of appellants for its violation. The elements of estoppel were not present.

We have considered the other contentions advanced by appellants and find them to be not meritorious.

In accordance with the foregoing, the judgment of the district court is affirmed.