David FRIED, Michael Chalecki, Sol Slonimsky and Eva Canabal, and Local 472, International Union of Electrical, Radio and Machine Workers (IUE, AFL-CIO), Plaintiffs,

v.

GLENN ELECTRIC HEATER CORPORATION, Defendant.

Civ. A. No. 830-61.

United States District Court
D. New Jersey.

Oct. 13, 1961.

Gross & Stavis, by Morton Stavis, Newark, N. J., for plaintiffs.

Platoff, Platoff & Heftler, by Thomas T. Warshaw, Union City, N. J., for defendant.

WORTENDYKE, District Judge.

The action is brought by certain employees of the defendant employer, and by Local 472, a labor organization constituting the collective bargaining representative for defendant's employees at its place of business in Newark, New Jersey. Jurisdiction is predicated upon the provisions of the National Labor Relations Act, 29 U.S.C.A. § 141 et seq., particularly those of section 185 of that Title. Diversity jurisdiction is also claimed as between plaintiff David Fried, a citizen of New York and the defendant, a New Jersey corporation, under 28 U.S.C. § 1331. The plaintiffs Michael Chalecki, Sol Slonimsky and Eva Canabal are all citizens of New Jersey. There exists no diversity jurisdiction as to them, although they purport to sue on behalf of themselves and of all others similarly situated.

Plaintiffs seek declaratory judgments under 28 U.S.C. § 2201.

On January 30, 1961, defendant (Glenn) entered into a written collective bargaining agreement with International Union of Electrical, Radio and Machine Workers (IUE, AFL-CIO) in behalf of and in conjunction with Local No. 472 (Local) of that organization. By the terms of that agreement, Glenn recognized Local as the sole and exclusive bargaining agent of all of Glenn's employees (excluding executive, professional, administrative, office and supervisory employees) engaged in production, maintenance and shipping, with respect to rates of pay, wages and hours, and other conditions of employment. That contract provided that all lay-offs and rehiring should be based on seniority, subject to the employee's being qualified, and that an employee's seniority rights should be lost through his resignation, dismissal for cause, failure to report for work after notice of recall from lay-off within a certain time, or lay-off or absence from employment for a period exceeding one year or for a period equivalent to his length of service, whichever was longer. Section 27 of the contract provides:

"No employee shall be laid off while any work, which can be done with the facilities and skills in the shop is being farmed out, provided, however, that in the event it shall be more economical for the Company to farm out said work, or where the materials or product cannot be produced by the Company within the time required for delivery, the Com-

pany shall have the right to farm out said work. * * * "

Section 32 of the contract provides:

"No employee covered by this agreement who has been retained by the Company beyond this trial period (45 days as provided in section 31) shall be discharged without just cause. The Company shall give notice of any discharge to the shop chairman at least one (1) day in advance of such discharge unless there shall be danger to life, limb or property. The Union shall have the right to challenge the propriety of the discharge of any employee and any such discharge shall be considered a difference, dispute or grievance to be dealt with in accordance with the grievance and arbitration procedure hereinafter set forth."

The grievance procedure referred to is prescribed in sections 39 and 40 of the contract and consists of three preliminary steps to be followed by arbitration in the case of a grievance which remains unresolved after the preliminary steps have been taken.

The individual plaintiffs are employees of the defendant and members of the plaintiff Local, and all parties are subject to the provisions of the collective bargaining agreement above referred to.

While that agreement was (and it continues to be) in effect, and on or about May 31, 1961, Glenn gave notice to its employees and to the Local that the employer would discontinue all manufacturing operations not later than October 1, 1961; that all machinery, equipment, buildings and inventory had been or would be disposed of, but that the employer would continue its sales operations, representing approximately eight manufacturers of heaters and exhaust equipment, and would continue as a dealer in surplus electrical equipment. The notice added that various departments of the employer's business would be dissolved, closed and shut down prior to the stated day, but that the office, shipping and maintenance sections of the business would not be affected. It was further stated in the notice that work would be available for most employees until late in September, but that in any event, four weeks' notice would be given prior to dismissal. In June, 1961, it came to the notice of the plaintiffs, or some of them, through an article in a newspaper published in Erie, Pennsylvania, that the defendant employer was planning to move to that city where it intended to commence "pilot" operations in September preliminary to full production in October, with some sixty employees.

On or about June 21, 1961, a committee of Local met with officers of Glenn to negotiate for the protection of the seniority rights of Glenn's employees represented by Local, and requested that such employees be transferred to Erie, Pennsylvania, with full seniority rights, and that no employee be laid off from the Newark plant while any job which he could perform was available either in Erie or in Newark. The Local further demanded that if any employee could not be moved from Newark to Erie, severance pay be paid to him. Alleging that, despite the foregoing demands, Glenn has failed to take any steps to assure its employees that they would be transferred to the Erie location with their seniority rights, or that the Local would be recognized as the collective bargaining agent of the employees at the Erie location, the complaint further sets forth that the Local submitted to the employer a list of employees who were willing to be transferred to the Erie plant, provided their seniority status and other rights were protected. Responsive to the Local's inquiries in this regard, an unsigned notice was posted, presumably by the employer, at the Newark plant, on September 25, 1961, advising that all employees would probably be permanently laid off on October 6, 1961; that accrued sick leave and vacation pay would be paid when uniforms, towels and tools were turned in; and that all persons wanting to go to Erie should see a designated person by October 1. On September 27, 1961, Glenn advised Local by letter that the list of em-

ployees desiring to go to Erie which Local had submitted was incorrect, and that those desiring to move to Erie should apply to the new owner of the defendant's business. The employer expressly stated in its letter that the existing collective bargaining agreement would not carry over to the Erie plant, because there had been a change of ownership, management, personnel and location of the business, and that it would be for the Erie employees to decide whether they desired to be represented by Local. The letter concluded by advising that seniority rights acquired by the Newark employees would not be retained by any of them who might move to Erie.

The plaintiffs Fried and Slonimsky have notified Glenn of their willingness to move with defendant's business to Erie, provided they may do so under the terms of the Union contract in effect with respect to the Newark plant, and with full seniority rights created by the terms thereof. Plaintiff Chalecki was inducted into the United States Army on September 22, 1961, and claims that he will have reemployment rights upon his discharge, in accordance with the applicable federal statute.

Plaintiffs ask the Court to adjudicate (1) that the seniority and other rights of Glenn employees, members of plaintiff Local, will remain in full force and effect, notwithstanding the removal of the plant to Erie, and that said rights will survive the expiration of the current contract when it terminates on January 30, 1962; (2) that the removal of defendant's plant from Newark to Erie will not impair the seniority rights of its employees; (3) that Glenn is obligated to offer to Newark employees jobs at its new plant in Erie (a) with full protection of their seniority rights and (b) with full recognition of Local as their collective bargaining agent thereat.

Plaintiffs also seek injunctive relief restraining Glenn from terminating the employment of any of the members of Local at the Newark plant unless he has first been offered employment at the Erie plant, with continuance of seniority and other rights under the Union contract, and directing Glenn to recognize the Local as the collective bargaining agent at the Erie plant.

Upon the filing of the complaint, which was partially verified by two of the individual plaintiffs, an order was made, ex parte, on September 29, 1961, directing the defendant to show cause why preliminary injunctive relief should not be granted in accordance with the prayers of the complaint. Upon return of this order to show cause, on October 5, 1961, affidavits were filed in behalf of the defendant, together with depositions taken on October 4, 1961, of representatives of the defendant.

The Court finds no jurisdiction to support the action as between the plaintiffs Chalecki, Slonimsky and Canabel on the one hand, and the defendant on the other. Diversity jurisdiction apparently exists between the plaintiff Fried and the defendant. Plaintiff Local is a labor organization representing employees of the defendant which is engaged in an industry affecting commerce as defined in Chapter 7 of Title 29. Therefore, this Court derives jurisdiction of the cause of action alleged by Local against the defendant under the provisions of 29 U.S. C.A. § 185(a). Local's right to sue in behalf of the individual plaintiffs and other employees of the defendant whom it represents is provided by subsection (b) of the same section. Venue is appropriately laid in this District in accordance with the provisions of subdivision (c) of that section.

Whether the parties should be relegated to arbitration by reason of the provisions of Section 41 of the contract relied upon I am not presently called upon to decide. See United Steel Workers v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1363, 4 L.Ed.2d 1432; Lodge No. 12, etc. v. Cameron Iron Works, Inc., 5 Cir., 1961, 292 F.2d 112.

The defendant denies that it is moving its plant to Erie, Pennsylvania. It contends that it is terminating its manufacturing activities in Newark, New Jersey, and that it has agreed to sell its physical

assets, including manufacturing equipment, to a new corporation in process of being formed in the State of Pennsylvania, which will shortly commence manufacturing operations in the City of Erie, in that State. The defendant, Glenn, is a closed corporation, all of its stock being owned by or under the control of the two brothers Glenn. Its Comptroller is one Bothwell, who is neither an officer nor a stockholder, but merely an employee of the Company. The Glenn brothers claim that they have entered into an agreement, which will ultimately be embodied in a writing, whereby Bothwell and one Finn, who is an employee of one of defendant's competitors, will form a Pennsylvania corporation, which will purchase from the defendant, at an aggregate purchase price of $200,000, some of the defendant's machinery and inventory, together with a lease, which defendant will acquire, for real estate in Erie, Pennsylvania, at which place the purchasers intend to commence their manufacturing operations. It is further represented that the purchase price of the inventory and machinery will be paid to the defendant, as seller, over a period of twelve years; to secure which payments a chattel mortgage will be taken upon the property to be sold. The two controlling stockholders of the defendant will each invest $10,000 in the new Pennsylvania corporation, in return for which each of the Messrs. Glenn will receive approximately 20% of the stock of the new corporation. This combined investment of $20,000 will be equalled by a similar amount to be invested by Finn and Bothwell. As of October 4, 1961, Bothwell had invested $5,000 on account of his stock interest in the new company. The remaining 60% of the stock of the new corporation will be held by Finn and Bothwell, who will control and direct the new corporation. Finn will be made President and General Manager and Bothwell will be Secretary-Treasurer of the new corporation. Neither of the Messrs. Glenn will hold any office therein. A further term of the agreement reached or in process of negotiation contemplates the designation of the defendant as exclusive sales representative for New York City and Northern New Jersey of the products to be manufactured by the new Pennsylvania corporation.

When the application for a preliminary injunction was argued, on return of the order to show cause, the Court had not had opportunity to examine the discovery depositions taken by the plaintiffs of the two controlling stockholders of Glenn, and of Bothwell, its Comptroller, on the previous day, nor to examine the brief submitted by the defendant in opposition to the application for injunctive relief. In order to enable the Court to consider the depositions and the briefs and to preserve the status quo between the parties for that purpose, a temporary restraining order was made which, by its terms, expires on the 16th of October, 1961.

■ Is this a class action? Rule 23 (a), F.R.Civ.P., 28 U.S.C.A., provides: "If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is (1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it; (2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or (3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought." Rule 23(a) (1) is applicable here. Hence Fried might be deemed representative of other employees in the Newark plant of defendant and could sue in his own and their behalf unless the conceded representation by Local of all such employees supercedes that of Fried. Pentland v. Dravo Corporation, 3 Cir., 1945, 152 F.2d 851, 852, follows Moore, 2 Fed.Prac. 2236, in defining a true class action as "one wherein, 'but for the class action device, the join-

der of all interested persons would be essential. This would be in cases where the right to be enforced was joint, common or derivative.'" Pentland held that the action there, which was brought under 29 U.S.C.A. § 216(b), was a spurious class action because a judgment for or against the plaintiff in that case could not work an estoppel against a nonjoining other employee of the same employer. No basis for a class action, genuine or spurious, by the individual plaintiffs is disclosed in the complaint because the collective bargaining agreement constitutes Local as the representative of all of the employees of the class to which the individual plaintiffs belong. No conflict of interest exists within the Local, as was the situation in Giordano v. Radio Corporation of America, 3 Cir., 1950, 183 F.2d 558. 29 U.S.C.A. § 157 reaffirms the right of employees to organize, to join labor organizations, and "to bargain collectively through representatives of their own choosing." This right has been exercised by defendant's Newark employees, resulting in the contract upon which the present action is based. By the terms of that contract the employer recognized the Local as the sole and exclusive bargaining agent for all employees engaged in production, maintenance and shipping with respect to rates of pay, wages, hours of employment and other conditions of employment. Plaintiff employees, by relying upon the contract, have adopted Local as their representative. 29 U.S.C.A. § 152(4). This action may not be maintained by any of the individual plaintiffs in a representative capacity. 29 U.S.C.A. § 159(a).

The respective rights of individual employees on the one hand and of the Local on the other, under a collective bargaining agreement such as that which underlies the present action, have been considered and defined in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 3 Cir., 1954, 210 F.2d 623, affirmed 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510. At page 627 of 210 F.2d of the Court of Appeals opinion in that case, Judge Staley says: "The collective contract plus the National Labor Relations Act binds the employer to include in the contract of hire which he may conclude with each individual employee in the bargaining unit the precise terms and conditions that have been set up by it. * * * The bargaining representative is made the sole agent for the unit and represents not only its members but all employees in that unit whether members of the union or not. The terms of the collective contract thus become part of the individual contract of employment, not because of the consensual acts of the employer and employee, but because the law says so no matter how those parties may feel about the matter. (Citing J. I. Case Co. v. N. L. R. B., 1944, 321 U.S. 332, 336, 64 S.Ct. 576, 88 L.Ed. 762) * * *. But not until an individual entered into a contract of hire with defendant did the latter become bound to pay that individual under such circumstances, and, if defendant failed to so pay, it breached, not its collective contract with the union, but its contract of hire with that individual employee. * * Consequently, we think that, if there was a violation of contract here, it was a violation of the individual employment contract and, thus, there is no federal jurisdiction since Section 301(a) cannot be invoked." Nevertheless, as stated in Westinghouse and in J. I. Case, supra, the individual employees are third party beneficiaries of the collective bargaining contract, some of the provisions of which may enure to the benefit of the union, as distinguished from some or all of its individual members. Westinghouse was, in effect, an action to compel the employer to pay wages to certain of its employees for a day upon which the employees did not work. In affirming the Court of Appeals, the Supreme Court refused to adopt the reasoning of the Court of Appeals in reaching its conclusion that the District Court, 107 F.Supp. 692, was without jurisdiction of the cause of action asserted in the case. In the language of Mr. Justice Frankfurter, 348 U.S. at pages 459–460, 75 S.Ct. at page 500, of the Supreme Court's opinion, we find the

reason for that Court's refusal to recognize jurisdiction: "Considering the nature of a collective bargaining contract, which involves the correlative rights of employer, employee *and* union, we might be disposed to read § 301 as allowing the union to sue in this case. With due regard to the constitutional difficulties which would be raised, and in view of the fact that such an interpretation would bring to the federal courts an extensive range of litigation heretofore entertained by the States, we conclude that Congress did not will this result. * * * The employees have always been able to enforce their individual rights in the state courts. They have not been hampered by the rules governing unincorporated associations. To this extent the collective bargaining contract has always been 'enforceable.'" Textile Workers Union, etc. v. Lincoln Mills, etc., 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 was an action by a union of employees to compel their employer to arbitrate grievances relating to work loads and work assignments in accordance with the provisions of a collective bargaining agreement in effect between the union and the employer. The District Court recognized jurisdiction under section 301 of the Labor Management Relations Act of 1947. The Court of Appeals for the Fifth Circuit reversed. The Supreme Court, in turn, reversed the Court of Appeals, holding that the congressional policy in favor of the enforcement of agreements between employers and representatives of employees to arbitrate grievance disputes was clear. After the date of the decision of the Court of Appeals in that case, the employer had terminated its operations and contracted to sell its manufacturing properties, thus rendering moot the grievances arising out of the apportionment of work loads and the assignment of jobs. To the extent, however, that the union sought a monetary award, a continuing controversy was recognized by the Court as existing. To similar effect see General Electric Co. v. Local 205, etc., 1957, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed. 2d 1028, and Goodall-Sanford Inc. v. Union of Textile Workers, etc., 1957, 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031.

Jurisdiction must be recognized in this case because the action is brought by a labor organization against an employer for a declaration of rights created by the terms of a collective bargaining agreement between the labor organization and the employer for the benefit of employees represented by the labor organization. Local 33 Int. Hod Carriers, etc. v. Mason Tenders, etc., 2 Cir., 1961, 291 F.2d 496. A justiciable controversy exists between the parties because the employer contends that it is at liberty, during the life of the collective bargaining agreement, to discontinue or curtail its operations at one location and to transfer the same or pursue other operations at another location without recognition of the seniority rights created by the terms of the agreement between the parties. The Local, on the other hand, contends that those seniority rights persist, at least during the life of the agreement, and that the employer is obligated to offer each of the employees represented by the Local continuing employment at the new location.

Does the complaint set forth a claim upon which relief can be granted to Local as representative of defendant's Newark employees? The action is brought to preserve and enforce the seniority rights created by the collective bargaining agreement in favor of defendant's employees represented by plaintiff Local. The complaint alleges that those rights are threatened by the employer's curtailment of operations in Newark, New Jersey, and by the sale of employer's inventory and equipment to a Pennsylvania corporation in process of organization, to be used by the purchaser in conducting, at Erie, Pennsylvania, some or all of the manufacturing operations theretofore carried on by the defendant at Newark. The collective bargaining agreement is presently and will continue in effect until January 31, 1962.

The complaint in this action sets forth a claim upon which relief can be granted by reason of the existence of a justiciable

controversy; the power of this Court to enter a declaratory judgment; and its jurisdiction as between Local and defendant. 29 U.S.C.A. § 185(a).

Plaintiffs rely upon Zdanok v. Glidden Company, 2 Cir., 1961, 288 F.2d 99, from which an appeal is presently pending in the Supreme Court of the United States. In that case, after the expiration of a collective bargaining agreement between Local and employer, certain former employees of the latter sought damages for breach of seniority provisions of the agreement which, by its terms, contemplated the arbitration of disputes. As the expiration date of the agreement approached, the employer gave notice to the Local that the agreement would be terminated on the date therein prescribed for its expiration. The employer commenced reduction of production at its plant in New York, and the removal of its machinery and equipment to a newly established plant in Pennsylvania where it continued production of similar products. The employer terminated the employment of the plaintiff employees prior to the expiration of the agreement. It offered to consider applications for employment at its Pennsylvania plant from former employees at the New York plant, if they would come to Pennsylvania and make application there upon the same basis as if they were new applicants seeking employment. The plaintiffs contended that, as beneficiaries of the collective bargaining agreement, and of the seniority provisions thereof, they were entitled to employment at the Pennsylvania plant. The Court of Appeals held that the plaintiffs had acquired vested seniority rights which could not be unilaterally annulled, and that if the employer had continued to operate the New York plant without a renewal of the union contract, or had reopened the New York plant after it had been closed for a time, the plaintiffs would have been entitled to reemployment with seniority. In construing the language of the contract, the Court of Appeals held that the terms thereof were not applicable only to the New York plant of the employer, but that a rational construction of the language would extend their application to any other location to which the employer might transfer its operations and continue work which the plaintiffs were eligible to perform. The refusal of the employer to recognize the existence of such rights to reemployment was a breach of the union contract for which the plaintiffs were entitled to recover damages.

 In the action before this Court no answer has as yet been filed. The affidavits and depositions submitted upon the return of the order to show cause for a preliminary injunction present critical issues of fact which cannot be resolved without a plenary trial. If it should then be disclosed that the proposed or pending removal and change of the defendant's operations is a subterfuge for the purpose of enabling the employer to evade its obligations under the union contract respecting the seniority of its employees, final injunctive relief may appear to be in order. On the other hand, if the employer, in good faith, is exercising its right to terminate or change its business operation, and to sell its equipment and physical assets, at arm's length, to another corporation, the sole remedy, if any, to which the former employees may be entitled is that of damages under the union contract. Upon a motion for preliminary injunction I am not called upon to anticipate the ultimate determination of the issues of fact or questions of law which may develop upon a plenary trial of this case. If the grant of a preliminary injunction would give to the Local or the complaining employees the seniority advantages to which the employees might become entitled as a result of a favorable adjudication of the controversy, a preliminary injunction should be denied. No preliminary injunction *may* be granted without a showing that a denial thereof would cause irreparable injury to the plaintiff or plaintiffs; but such preliminary relief *must* be denied where the rights of the plaintiffs are doubtful. Murray Hill Restaurant, Inc. v. Thirteen Twenty One Locust, Inc., 3 Cir., 1938, 98 F.2d 578. Upon these prin-

ciples it is obvious that unless and until there has been a determination that the defendant's contemplated or pending actions which the plaintiffs seek to restrain, are violative of enforceable vested rights created by the terms of the union contract, no injunctive relief should be granted. Warner Bros. Pictures, Inc. v. Gittone, 3 Cir., 1940, 110 F.2d 292. Accordingly, the order to show cause in this action, made on September 29, 1961 is discharged and this Court's restraining order of October 6, 1961 is vacated.

The foregoing opinion embodies the findings of fact and conclusions of law required by F.R.Civ.P. rule 52(a), 28 U.S. C.A.

Present order accordingly.