**BROTHERHOOD OF LOCOMOTIVE ENGINEERS et al. v. CHICAGO, M., ST. P. & P. R. CO. et al. (BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN et al., Interveners).**

Civ. No. 189.

District Court, E. D. Wisconsin.

Aug. 23, 1940.

Alex J. Brown, Jr., of Chicago, Ill., and Robert P. Pike, of Mayville, Wis., for plaintiffs.

Attorneys for defendants did not appear, so far as this part of the case is concerned.

Ralph Hoyt, of Milwaukee, Wis., for interveners.

DUFFY, District Judge.

The pending action is one for declaratory judgment brought by the Brotherhood of Locomotive Engineers against the defendant railway company and its trustees, asking for a construction of a portion of a contract (also called mediation agreement) entered into by the plaintiff and the defendant in the year 1929.

The motion before the court is by the Brotherhood of Locomotive Firemen and Enginemen and their representatives, who seek to intervene in this action. The motion is made under Rule 24, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, with a claim that petitioners are entitled to intervene as of right under subsection (a) (2), and should be permitted to intervene under subsection (b) (2), which provides for permissive intervention.

As far as applicable, Rule 24(a) provides: "Upon timely application any one shall be permitted to intervene in an action * * * (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action * *. * *."

Rule 24(b) provides: "Upon timely application any one may be permitted to intervene in an action * * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

The plaintiffs claim to represent not only all of the members of the Brotherhood who are employed by the defendant railway company, but also to act in behalf of other engineers similarly situated. The petitioners make a similar claim as to all fire-

men employed by the defendant railway company.

The plaintiff alleges that long prior to May 20, 1926, the defendant railway company had recognized the right of the plaintiff Brotherhood to negotiate on behalf of the engineers employed by it, and had entered into collective bargaining agreements concerning rates of pay, rules and working conditions. Certain disputes arose, and on October 3, 1929, plaintiffs invoked the United States Board of Mediation, and an agreement was finally reached which included the following provisions:

Rule 24:

"Engineers taken off under this rule shall be returned to service as engineers in the order of their seniority and in their respective class of service, as soon as it can be shown that those in extra passenger service average the equivalent of 4800 miles per month; in pooled, chain gang or any other unassigned service paying freight rates average the equivalent of 3800 miles per month.

"On road extra lists a sufficient number of engineers will be maintained to keep the average mileage, or equivalent thereof, between 2600 and 3800 miles per month.

"In assigned yard service, regulation will be made by requiring each regularly assigned engineer to lay off when he has earned the equivalent of 35 days per month.

"In extra yard service, a sufficient number of engineers will be maintained to keep the average earnings between 26 and 35 days per month.

"In regulating the working lists in the respective classes of service, each list will be handled separately. In the regulation of mileage, neither the minimum nor maximum is guaranteed."

Petitioners contend that in addition to the provisions of the Mediation Agreement hereinbefore quoted there has been in force at all times since November 16, 1929, a paragraph Number Fourth of Rule 24–G of the Engineers schedule reading as follows: "Fourth: In the regulation of assigned and extra passenger service, a sufficient number of men will be assigned to keep the mileage, or equivalent thereof, within the limitations of 4,000 and 4,800 miles per month; in assigned, pool, chain gang or other service paying freight rates a sufficient number of men will be assigned to keep the mileage or equivalent

thereof within the limitations of 3,200 and 3,800 miles per month."

On September 1, 1924, there was made effective between the Brotherhood of Locomotive Firemen and Enginemen and the predecessor of the defendant railway company, a contract containing a schedule of rules pertaining to firemen. The petitioners claim the said contract was in full force and effect at the time that the Mediation Agreement referring to the engineers rules was promulgated, and that its provisions were well known to all the parties to the Mediation Agreement.

The purpose of the rules referred to is to spread work among members of the engineers' list and the firemen's list. The rules limit the number of miles per month any individual engineer or fireman may travel on duty, or the number of days per month he shall be permitted to work. When he reaches the maximum of permitted miles or days, he is laid off for the balance of the month, and thus opportunity is given for other engineers or firemen to move up in rank for the balance of the month; and it also permits those in the upper portion of the firemen's list to work as engineers during the remaining days of the month. Employment as an engineer is more remunerative than employment as a fireman.

When the volume of traffic increases, or when engineers are laid off because of operation of the rules, firemen are called into service as engineers; when traffic declines, some engineers take the place of firemen. In other words, firemen may become engineers for the time being, or engineers may replace firemen for the time being.

Because of the inter-connection between the two lists, the firemen claim that any change in the engineers' rules or the interpretation thereof, which would increase the number of miles or days that each engineer might work during the month, would necessarily effect a corresponding reduction of the opportunity of firemen to work as engineers, and of firemen in the lower portion of the list, to work at all.

If the plaintiffs' contentions in this action are upheld, there can be no question but that engineers will be permitted to work more days and travel more miles per month than is the case under the rules as they have heretofore been interpreted. The petitioners contend, therefore, that the

596

class which they represent, have a vital and a direct interest in the outcome of this action.

The attitude of the defendant railway company is that although it desires a correct interpretation of the contract, that it is not greatly concerned whether it pays wages to those on the engineers' list or to those on the firemen's list. That the sum total of such wages will in either event, be the same.

If the interest of the railway company is more or less perfunctory, the same cannot be said of the interest of the firemen. As a practical matter, they are the real parties in interest in opposition to the claims of the plaintiffs.

Whether the applicants may intervene as a matter of right may be considered doubtful, for while the defendant railway company, with its rather indifferent attitude, may not give adequate representation to the interests of the firemen, yet the judgment in this action would not in the terms thereof be binding on the firemen. It is the engineers' contract that is the subject of this action. The case of United States v. C. M. Lane Life Boat Company, D.C., 25 F.Supp. 410, has been cited in support of applicant's contention that it may intervene as a matter of right. The court did say in that case, 25 F.Supp. at page 411: "*. * * The provision quoted would seem to apply in this case, for a judgment against the insurance company, though it would not directly bind the petitioner, would, in the last analysis, do so indirectly."

Such a construction would be quite a strain on the meaning of the words, "is or may be bound by a judgment in the action." However, it is not necessary to decide this point, in view of our decision as to permissive intervention.

■ The new rules should have a liberal construction, and one of the objects sought by these rules was to avoid a multiplicity of suits. All related controversies should, as far as possible, be settled in one action. With this viewpoint in mind, Rule 24(b) gives the court the discretion to permit intervention "when an applicant's claim or defense and the main action have a question of law or fact in common." In the recent case of Securities & Exchange Commission v. United States Realty and Improvement Company, 310 U.S. 434, 60 S.Ct. 1044, 1055, 84 L. Ed. ——, the Supreme Court in sustaining

the right of the S.E.C. to intervene, and referring to Rule 24(b), said: "This provision plainly dispenses with any requirement that the intervenor shall have a direct or personal or pecuniary interest in the subject of the litigation."

■ Intervention by the applicants will not indirectly delay or prejudice the adjudication of the rights of the original parties, therefore the motion of applicants to intervene will be granted.