**TEXTILE WORKERS UNION OF AMERICA, CIO, Appellant,**

v.

**The ALLENDALE COMPANY et al., Appellees.**

**HAYWARD–SCHUSTER WOOLEN MILLS, Inc., Appellant,**

v.

**The ALLENDALE COMPANY et al., Appellees.**

**Nos. 12331, 12374.**

United States Court of Appeals District of Columbia Circuit.

Reargued March 31, 1955.

Decided July 14, 1955.

Bastian, Wilbur K. Miller and Danaher, Circuit Judges, dissented.

Mr. David E. Feller, Washington, D. C., with whom Messrs. Arthur J. Goldberg and Thomas E. Harris, Washington, D. C., were on the brief, for appellant in No. 12331.

Mr. John K. Pickens, Washington, D. C., with whom Messrs. Jerry N. Griffin, and Donald S. Dawson, Washington, D. C., were on the brief, for appellant in No. 12374.

Mr. C. Roger Nelson, Washington, D. C., with whom Mr. Franklin M. Schultz, Washington, D. C., was on the brief, for appellee The Allendale Company, and certain other appellees in both cases.

Mr. Edward H. Hickey, Atty., Dept. of Justice, entered an appearance for appellee James P. Mitchell, Secretary of Labor, in both cases.

Before EDGERTON, PRETTYMAN, WILBUR K. MILLER, BAZELON, FAHY, DANAHER and BASTIAN, Circuit Judges.

BAZELON, Circuit Judge.

These consolidated appeals [1] are from orders of the District Court denying intervention in a suit to review and set aside certain determinations by the Secretary of Labor under the Walsh-Healey Act.[2] The determinations fixed "the prevailing minimum wages" at a national level for the woolen and worsted industry in manufacturing goods under contracts with the Government. They raised previously determined minimums which had been fixed on a regional level.

Our appellees are employers in the industry, operating in regions where the prevailing wages are lower than the national level. They opposed these changes in the administrative proceeding and brought the suit for review in the District Court as "persons adversely affected or aggrieved" under the Fulbright Amendment to the Walsh-Healey Act.[3]

The following is a brief description of the appellants and their respective interests in the determinations which they instigated before the Secretary and now seek to defend by intervention in the review proceeding. Appellant in No. 12331 is a union of employees which will enjoy increased wages under the determination. Appellant in No. 12374 is an employer competing with the appellee companies in bidding for Government contracts and operating in a region where the prevailing rates are even higher than those fixed by the Secretary; hence its ability to compete with the appellees for Government business will be effectively destroyed if appellees succeed in their attack upon these determinations.

Appellees point to the Supreme Court's holding in Perkins v. Lukens Steel Co. that Walsh-Healey determina-

1. After these appeals had been argued separately before panels of this court, we ordered their consolidation and reargument before the court in banc.

2. 49 Stat. 2036–2040 (1936), as amended, 41 U.S.C. §§ 35–45.

3. 66 Stat. 308, 41 U.S.C. § 43a.

tions are not judicially reviewable.[4] From this they argue that the absence of any reference to intervention in the subsequently enacted Fulbright Amendment, granting aggrieved persons judicial review to attack the determinations, must be construed to preclude intervention in such review by persons who would be commensurately aggrieved if the determinations were set aside.[5] We think this argument untenable. The Fulbright Amendment creates the right of action which brings the case into court. Once there, the case is governed by the principles which control the course of all litigation in the District Court.

Nor do we agree with appellees' contention that these principles, reflected in Rule 24 of the Federal Rules of Civil Procedure, 28 U.S.C.A., bar the interventions sought here.

Rule 24 provides:

"(a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: * * * (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action * * *.

"(b) Permissive Intervention. Upon timely application anyone may be permitted to intervene in an action: * * * (2) when an appli-

cant's claim or defense and the main action have a question of law or fact in common. * * * In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."[6]

Obviously tailored to fit ordinary civil litigation, these provisions require other than literal application in atypical cases. Administrative cases, as the present one demonstrates, often vary from the norm.

■ In conventional litigation, one is bound by a judgment in the action, within the meaning of Rule 24(a), when the judgment is res judicata as to him.[7] Appellants in this case were not parties in a technical sense to the administrative proceeding; nevertheless they are "bound" by the determinations therein in a very practical sense. Authoritative rulings made in this proceeding fixed a wage at a national level. These rulings are under attack in the suit for review below. It is true that, if the attack succeeds, the final judgment would preclude neither the appellants nor the appellees from later pressing their interests at the administrative level. But ultimate victory at that point cannot overcome the "practical disadvantage" to which appellants may be subjected as a result of the prior judicial action.[8] For example, if the deter-

4. 1940, 310 U.S. 113, 127–129, 60 S.Ct. 869, 84 L.Ed. 1108.

5. Whether Congress may constitutionally re-define as a case or controversy under Article III a dispute which the Supreme Court has held not to be such a case or controversy is a question which is likely to be determined in the appellees' review suit. But the trial court's conclusion, in its interlocutory order granting the preliminary injunction herein, is not yet reviewable. Nor are we here deciding that the union would have standing to litigate the validity of a wage determination which it should deem unsatisfactory. Our only concern here is whether, unless and until the trial court decides that this litigation is beyond the judicial power, both appellants should be permitted to intervene.

6. An order denying intervention of right is appealable. Sutphen Estates, Inc. v. United States, 1951, 342 U.S. 19, 20, 72 S.Ct. 14, 96 L.Ed. 19. "[A]n order denying leave to intervene where intervention is a permissive matter" is also appealable if the denial is an abuse of discretion. Brotherhood of Railroad Trainmen v. Baltimore & O. Ry., 1947, 331 U.S. 519, 524–25, 67 S.Ct. 1387, 91 L. Ed. 1646.

7. Sutphen Estates, Inc., v. United States, 1951, 342 U.S. 19, 72 S.Ct. 14, 96 L.Ed. 19.

8. See Note, Intervention and the Meaning of "Bound" under Federal Rule 24(a) (2), 63 Yale L.J. 408, 415 (1954). Cf. Clark v. Sandusky, 7 Cir., 1953, 205 F. 2d 915, 918–919.

minations are upset, the membership of the appellant union will be deprived of economic benefits. That the union may subsequently receive other benefits from new determinations which it may procure cannot compensate for the losses suffered in the interim. Nor does the fact that the union may bargain for a wage higher than the minimum convince us that it and its members are not bound, in a practical sense, by minimum wage determinations. Similarly, if the appellant-employer is forced out of business by an injunction restraining the effectuation of the wage determinations, he can take little solace from a subsequent moral victory. Hence we think that the strict test of res judicata is inappropriate in applying Rule 24(a) to the present case.

■ The right of the appellants to intervene is not affected by the fact that the general position they assert is already represented in the action by the Secretary of Labor. The Secretary's response to the motions to intervene declares that neither the appellants nor the appellees can show themselves to be directly affected by the determinations. This is hardly an assurance of adequate representation for the appellants.[9] Even if the Secretary espoused the appellants' interests with greater heart, it would not necessarily preclude their appearance to plead for themselves.[10]

■ Generally "a claim of an absolute right to intervene must be based upon the language of Rule 24(a)."[11] But this rule is not "a comprehensive inventory of the allowable instances for intervention" as of right. Missouri-Kansas Pipe Line Co. v. United States, 1941, 312 U.S. 502, 505, 61 S.Ct. 666, 85 L.Ed. 975. In that case, in reversing an order denying intervention, the Supreme Court was not concerned with the distinctions between 24(a) and (b). In fact, the Court spoke in terms of permissive intervention:

"We are not here dealing with a conventional form of intervention, whereby an appeal is made to the court's good sense to allow persons having a common interest with the formal parties to enforce the common interest with their individual emphasis. Plainly enough, the circumstances under which interested outsiders should be allowed to become participants in a litigation is, barring very special circumstances, a matter for the *nisi prius* court. But where the enforcement of a public law also demands distinct safeguarding of private interests by giving them a formal status in the decree, the power to enforce rights thus sanctioned is not left to the public authorities nor put in the keeping of the district court's discretion."[12]

In that case, a consent decree specifically provided for such intervention. But the teaching of the case is not so narrowly limited. It expresses generally the proposition that failure to come within the precise bounds of Rule 24's provisions does not necessarily bar intervention if there is a sound reason to allow it.[13]

9. See Kaufman v. Societe Internationale, 1952, 343 U.S. 156, 160–62, 72 S.Ct. 611, 96 L.Ed. 853.

10. See Wolpe v. Poretsky, 79 U.S.App. D.C. 141, 143, 144 F.2d 505, 507, certiorari denied, 1944, 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621. In Missouri-Kansas Pipe Line Co. v. United States, 1941, 312 U.S. 502, 508–509, 61 S.Ct. 666, 85 L.Ed. 975, where a stockholder intervened on behalf of a corporation, the Court held that the corporation was sufficiently before the court so that there was no need to rule on the corporation's own petition for intervention. We are not here concerned with the question of whether appellants' intervention constitutes adequate representation of the interests of additional parties who might wish to appear hereafter.

11. 4 Moore, Federal Practice 33 (2d ed. 1950).

12. 312 U.S. at page 506, 61 S.Ct. at page 667.

13. Indeed, in System Federation No. 91 v. Reed, 1950, 180 F.2d 991, 998, the Sixth Circuit, relying upon the Missouri-Kansas Pipe Line case, held that there was an absolute right to inter-

■ Even if 24(a) were inapplicable here, we are convinced that appellants would be entitled to intervene under the terms of 24(b). Appellees concede that appellants may have a "general interest" in the subject of the suit, but they assert that this interest does not constitute a "claim or defense" as required by the rule. Principal reliance is placed on Jewel Ridge Coal Corp. v. Local 6167.[14] But, as Professor Moore points out, in commenting upon the Jewel Ridge case and others of similar purport, intervention has been allowed in situations where "the existence of any nominate 'claim' or 'defense' is difficult to find."[15] And establishing a "claim or defense" for purposes of permissive intervention is, of course, not dependent upon a showing of "direct pecuniary interest" in the litigation.[16]

■ In any event, appellants have much more than a "general interest" to protect. They have a real economic stake in the outcome of this litigation. It is similar to the interest which prompted this court to approve the trial court's grant of intervention in Champ v. Atkins,[17] the principal example cited by Professor Moore in his comment on the Jewel Ridge case. There members of a taxicab association sought a judgment declaring that their driving permits should not be suspended for nonpayment of a judgment. The judgment creditor, who was permitted to appear, obviously could present no "claim or defense" in the technical sense. But we recognized that the creditor's "economic interest" in inducing payment of the debt, which was

likely to occur with suspension of the taxi drivers' licenses, was sufficient to justify intervention under Rule 24.[18]

It is clear, too, that there is a common question of "law or fact" at issue. Appellees have an economic interest in invalidating the wage determinations. The appellants' interests lie in supporting them. Multiplicity of suits can be avoided by settling such related controversies in a single action. Upon this ground, intervention was allowed in Brotherhood of Locomotive Engineers v. Chicago, M. St. P. & P. R. R.[19] There a firemen's union was allowed to become a party to a suit by an engineers' union to construe an agreement with the railroad dealing with work for its members. The firemen's union contended that any additional work days won by the engineers would be at the expense of the firemen. The court recognized that excluding the firemen from the engineers' action might necessitate a separate suit to construe the firemen's contract. Here, too, if appellants are excluded from this action, and a judgment is entered invalidating the wage determinations, appellants will eventually bring the controversy back to court to assert the position they ask to present now. The same issues, both of law and fact, would be involved.

In exercising its discretion under Rule 24(b), the court must be governed in no small part by the likelihood of undue delay resulting from intervention. Here appellants' interests demand the speediest possible conclusion of the controversy because the wage determinations they have been striving for are stayed pend-

vene to secure benefits of a consent decree, without referring to any provision in the decree permitting such intervention. The court said:
"In this case, the foundation of Reed's right to intervene is the consent decree and injunction protecting the members of his class from discrimination and enjoining the violation of their seniority rights. It was not a conventional form of intervention; Reed, as a member of the class represented, had a right to intervene to secure the benefits of such decree."

14. D.C.W.D.Va.1943, 3 F.R.D. 251.

15. 4 Moore, Federal Practice 60 (2d ed. 1950).

16. Securities and Exchange Comm'n v. United States Realty Co., 1940, 310 U.S. 434, 458–460, 60 S.Ct. 1044, 1055, 84 L.Ed. 1293.

17. 1942, 76 U.S.App.D.C. 15, 128 F.2d 601.

18. 76 U.S.App.D.C. at page 16, 128 F.2d at page 602.

19. D.C.E.D.Wis.1940, 34 F.Supp. 594.

ing the outcome of this suit. Clearly, the only interest that might be served by delay would be that of the appellees.

Under the circumstances of this case, then, we think the denial of appellants' petitions to intervene exceeded the limits of discretion. As we said in Wolpe v. Poretsky, appellants "have such a vital interest in the result of [the] suit that they should be granted permission to intervene as a matter of course unless compelling reasons against such intervention are shown." [20] No such "compelling reasons" appear here.[21]

The interventions sought here would serve the ends of justice. They would also promote judicial and administrative convenience by avoiding a multiplicity of proceedings and by bringing to the aid of the tribunal the parties who "may know the most facts and can best explain their implications." [22]

Reversed and remanded.

WASHINGTON, Circuit Judge, took no part in the rehearing and decision of the above entitled cases.

BASTIAN, Circuit Judge, with whom WILBUR K. MILLER, Circuit Judge, concurs (dissenting).

I am unable to agree with the decision of the majority. In each of these consolidated cases the District Court denied the right of the appellant to intervene as a party defendant on the side of the Secretary of Labor in a case pending in the District Court entitled Allendale Co., et al. v. Mitchell, Secretary of Labor, Civil Action No. 1630–54.

Under Section 1 of the Walsh-Healey Act,[1] it is provided that there shall be included certain representations and stipulations in every government contract for the manufacture or furnishing of materials, supplies, articles and equipment in any amount exceeding $10,000.00. One of these representations and stipulations is that all persons employed by the contractor shall be paid "not less than the minimum wages as determined by the Secretary of Labor to be the prevailing minimum wages for persons employed on similar work or in the particular or similar industries or groups of industries currently operating in the locality in which the materials, supplies, articles, or equipment are to be manufactured or furnished under said contract."

Pursuant to the said act, the then Secretary of Labor issued a prevailing minimum wage determination for the Woolen and Worsted Industry; and, on April 1, 1954, the Secretary promulgated an amendment providing that the prevailing minimum wage for the Broad-Woven

20. 79 U.S.App.D.C. 141, 144, 144 F.2d 505, 508, certiorari denied, 1944, 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621.

21. Appellants are members of the class for whose benefit the wage determinations here under attack were issued and would be materially affected by an adverse decision. They should therefore be heard in defense of their interests if no prejudice would result therefrom to other parties. Wolpe v. Poretsky, 79 U.S.App.D.C. 141, 144 F.2d 505, certiorari denied, 1944, 323 U.S. 777, 65 S.Ct. 190, 89 L.Ed. 621; System Federation No. 1 v. Reed, 6 Cir., 1950, 180 F.2d 991, 998; Brotherhood of Locomotive Engineers v. Chicago, M. St. P. & P. R. R., D.C.E.D.Wis.1940, 34 F.Supp. 594, 596. Cf. Champ v. Atkins, 1942, 76 U.S.App.D.C. 15, 128 F.2d 601. Moreover, appellants were the prime movers in the administrative proceeding which resulted in the determinations. As the Second Circuit said in a similar situation arising under the Public Utility Holding Company Act of 1935, 15 U.S. C. § 79 et seq.:

"Although the Act is silent on the subject of intervention when an order of the commission comes before a court for review, it would seem that the company must have a right to intervene in such a case as this. It was the petitioner in the proceeding concluded by the order appealed from; it has an interest in the event, which the petitioners ought not be allowed to deprive it of unheard. * *" Morris v. Securities and Exchange Comm'n, 2 Cir., 1941, 116 F.2d 896, 898.

22. Southern Garment Mf'rs Ass'n v. Fleming, 1941, 74 App.D.C. 228, 234, 122 F.2d 622, 628.

1. 49 Stat. 2036–40 (1936), as amended, 41 U.S.C.A. §§ 35–45.

Goods, Yarn and Thread Branch of the Woolen and Worsted Industry and for Pressed Felt thenceforth would be $1.20 an hour, and that the prevailing subminimum rate for learners and beginners contracts would be $1.05 an hour.

Thereafter, the suit in which appellants seek to intervene (i. e., Civil Action No. 1630–54) was filed, the plaintiffs in that suit alleging that they were prospective bidders on future government contracts operating in regions where the prevailing wages are lower than the national level. Those plaintiffs seek to permanently enjoin the Secretary of Labor from putting into effect the April 1, 1954 amendment, and ask that the amendment be declared invalid. The complaint also alleged, among other things, that the wage determinations were nationwide in their application, whereas the Walsh-Healey Act provides that the determination shall be at prevailing minimum wages in the locality in which the materials, supplies, articles or equipment are to be manufactured or furnished. The District Court granted an application for a stay and preliminary injunction.

On April 29, 1954, appellant Textile Workers Union of America, CIO, sought to intervene in Civil Action No. 1630–54 as party defendant on the side of the Secretary of Labor; and on May 18, 1954, appellant Hayward-Schuster Woolen Mills, Inc. sought to intervene in the same civil action as party defendant on the side of the Secretary of Labor. Both applications were denied by the District Court. These appeals followed.

The Textile Workers Union of America, CIO, represents as bargaining agent six of the named plaintiffs in the civil action referred to, and also represents employees of other mills in the industry that have not joined as plaintiffs. It is claimed by the Union that its intervention will insure that a decision vitally and directly affecting wage contracts of the Woolen and Worsted Industry will not be made without affording the employees in that industry an opportunity to be heard.

It is claimed on behalf of Hayward-Schuster Woolen Mills, Inc. that it operates as an employer bidding for government contracts in a region where the prevailing rates are even higher than those fixed by the Secretary, and that, therefore, the construction of the Walsh-Healey Act as urged by the plaintiffs would result unfavorably to this appellant.

First, appellants claim that intervention is permitted by Section 10 of the Walsh-Healey Act, known as the Fulbright Amendment. This amendment is quoted in the margin.[2]

A reading of Section 10(b) of the Fulbright Amendment shows by its terms that review of the wage determination can be granted only to a person "*adversely* affected or aggrieved thereby" (underscoring supplied) and, certainly, neither appellant is so affected or aggrieved, as they both *support* the position of the

2. "Sec. 10. (a) Notwithstanding any provision of section 4 of the Administrative Procedure Act, such Act shall be applicable in the administration of sections 1 to 5 and 7 to 9 of this Act.

"(b) All wage determinations under section 1(b) of this Act shall be made on the record after opportunity for a hearing. Review of any such wage determination, or of the applicability of any such wage determination, may be had within ninety days after such determination is made in the manner provided in section 10 of the Administrative Procedure Act by any person adversely affected or aggrieved thereby, who shall be deemed to include any manufacturer of, or regular dealer in, materials, supplies, articles or equipment purchased or to be purchased by the Government from any source, who is in any industry to which such wage determination is applicable.

"(c) Notwithstanding the inclusion of any stipulations required by any provision of this Act in any contract subject to this Act, any interested person shall have the right of judicial review of any legal question which might otherwise be raised, including, but not limited to, wage determinations and the interpretation of the terms 'locality', 'regular dealer', 'manufacturer', and 'open market'."

Secretary of Labor. The obvious purpose of Section 10(b) is to give a person "adversely affected or aggrieved" the opportunity to contest the action of the Secretary, which was not possible under the holding in Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108. It gives no right to intervene in support of the administrative action.

Section 10(c) of the Fulbright Amendment has no application to the present situation because it is clear, both from the reading of this section and from its legislative history, that the term "interested person" does not cover either the union or Hayward-Schuster. It simply permits any government contractor, whose contract contains stipulations required by the Walsh-Healey Act, to obtain a judicial determination of any legal question in any appropriate proceeding, to the same extent that such question could be raised if the stipulations were not contained in the contract.

It is also claimed that appellants are entitled to intervene under Rule 24, F.R. Civ.P., quoted in the margin.[3] It is obvious that conditions (1) and (3) of Rule 24(a) have no application to appellants' right to intervene; and, under condition (2) of that rule, intervention as of right can be granted only "when the representation of the applicant's interest by existing parties is or may be inadequate *and* the applicant is or may be bound by a judgment in the action." (Italics supplied.)

Conceding, *arguendo*, under Rule 24 (a) (2), that appellants are or may be bound by a judgment in the civil action, certainly there is no basis for assuming that the representation of the appellants' interests by the Secretary of Labor "is or may be inadequate." The Secretary is defending his own action and there is no basis for holding that the Secretary is not going to defend his own judgment adequately. Certainly, nothing has been shown on the record to indicate this.

The majority, in their opinion, refer to the Secretary's response in the District Court to the motions to intervene wherein (so the majority states) the Secretary declares "that neither the appellants nor the appellees can show themselves to be directly affected by the determinations."[4] The majority say that this is "hardly an assurance of adequate

3. "(a) *Intervention of Right.* Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action; or (3) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof.

"(b) *Permissive Intervention.* Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or agency or upon any regulation, order, requirement or

agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

4. As a matter of fact, the response of the Secretary to each appellant's petition to intervene was as follows: "Without waiver of the objections previously taken by defendant in this action, defendant interposes no other objection to applicant's Motion to Intervene." The objections previously taken by the Secretary were to the application of Section 10(b) of the Walsh-Healey Act, as amended, to those plaintiffs who could not show they were "adversely affected or aggrieved" by the Secretary's determination of the prevailing minimum wages, and that this provision required a showing of direct damage or injury. He could not, in my opinion, be more right as to the meaning of Section 10(b); but this does not mean he would not protect his own decision.

representation for the appellants" and argue from this that, even if the Secretary espoused the appellants' interests with greater heart, it would not necessarily preclude their appearance to plead for themselves. To say that the Secretary's statement in response to the motion has anything to do with adequate representation on the main point at issue is, to say the least, a *non sequitur,* and is unfair to the Secretary of Labor. Certainly, this was not the meaning of his statement. Not one thing appears in the record to indicate that the Secretary will not adequately support his own findings. The decision of the majority, holding in effect that his representation "may be inadequate", is based purely on speculation, without the slightest basis or foundation. Further, if the holding as to the meaning of the phrase, "may be inadequate", correctly construes condition (2) of Rule 24(a), then "anyone" (with reference to Rule 24(a) (2)) is permitted to intervene without being obliged to indicate how or in what way his interests will not be adequately represented. This is not, in my opinion, the purpose of the rule.

So far as Rule 24(b) is concerned, I believe that this court in these cases has unjustly interfered with the discretion of the trial court. If the decision of the majority is correct, Rule 24(b) has been changed to read: "Upon timely application anyone *shall* be permitted to intervene." There is nothing in the record to show abuse of discretion by the trial judge. He undoubtedly felt that appellants supported the action of the Secretary, as shown by their applications to intervene on his side, and that there was no reason to clutter up the case with further parties, as the Secretary would carry through with fairness; and I think the District Judge was right.

It is my opinion, therefore, that the orders appealed from should be affirmed.

DANAHER, Circuit Judge (dissenting).

I find myself in accord with much that has been written by Judge Bastian in his dissenting opinion, concurred in by Judge Miller, but in noting my dissent as to both presently pending appeals, I wish to emphasize certain other factors.

Re No. 12,374, the appeal of Hayward-Schuster Woolen Mills, Inc. which sought to intervene as defendant on the side of the Secretary, not because it believed the minimum prevailing wage as determined by the Secretary was the correct wage, but because appellant believed it should not be lower than $1.20 per hour although appellant tells us it is paying the highest prevailing wages of any manufacturer in the industry. Appellant urges that the Fulbright amendment[1] granted it intervention as of right. On that ground, appellant insists that it comes under Rule 24(a) of the Federal Rules of Civil Procedure, and further, that the Rule entitles the appellant to intervene as of right because the representation of the interest of appellant is or may be inadequate and the appellant will be bound by a judgment in the main action. Appellant argues that in any event it is entitled to permissive intervention under Rule 24(b), but the record discloses no showing that the District Judge abused his discretion. As will be developed in my views, the Secretary's determination has resulted in no fixing of *private* rights nor does the situation present the elements of a litigable adversary action stemming from the administrative order whose review is sought. I believe the appellant's claims in these particulars must be gauged in the light of the purposes of the Walsh-Healey Act and by what the sponsors of the Fulbright amendment sought to accomplish. Thus tested, I believe the appellant's position is untenable.

The Walsh-Healey Act was designed to permit the government to prescribe the standards which would obtain *when it purchased its own supplies.* Congress

1. 41 U.S.C.A. § 43a (1952).

sought "to obviate the possibility that any part of our tremendous national expenditures would go to forces tending to depress wages and purchasing power and offending fair social standards of employment." [2] Indeed, Congress sought affirmatively through the Act "to use the leverage of the Government's immense purchasing power to raise labor standards." [3] The Walsh-Healey Act "was not intended to be a bestowal of litigable rights upon those desirous of selling to the Government; it is a self-imposed restraint for violation of which the Government—but not private litigants—can complain." [4] Congress knew very well that some manufacturers would be excluded from public contracts if they failed or refused to raise their standards. It knew, equally, that a determination by the Secretary compels nothing of any private party since he need not submit bids for nor work upon government orders. Notwithstanding, Congress provided that determinations under the Act are to be made by the Secretary to the end that the Government may exercise its "unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." [5] The provisions of the Act are not merely permissive, they are mandatory, and "Congress submitted the administration of the Act to the judgment of the Secretary of Labor, not to the judgment of the courts." [6]

Among the sections of the Walsh-Healey Act administered by the Secretary are §§ 35–39 and §§ 41–43,[7] including, of course, wage determinations under § 35(b).

Thus, when Congress adopted the Fulbright amendment, by its subsection (a) it made applicable to the administration of the mentioned sections of the Walsh-Healey Act certain provisions of the Administrative Procedure Act, and, applicable to this particular case, the judicial review provision.[8] The Fulbright amendment says that review of a wage determination or of its applicability may be had "by any person adversely affected or aggrieved." The Administrative Procedure Act added nothing to status for it provides for review only by a person "suffering legal wrong" or "adversely affected or aggrieved." A reading of the scope of review authorized [9] makes it clear that the amendment has created no legal "right" where none existed. To persons *"adversely"* affected or aggrieved were accorded "proper procedural and judicial safeguards." [10]

It is to be assumed that when Congress imposes certain duties upon the Secretary to effectuate Congressional purpose and policy, those duties will be performed. They are to be carried out as Congress directed, and when a determination shall have been made "on the record after opportunity for a hearing" and agreeably to law, "that decision was stated by the Act to be conclusive as to matters of fact for purposes of the award of government contracts. Congress sought to have the procurement officers advised by the experience and discretion of the Secretary rather than of the District Court." [11] I see no room here for a prospective bidder to become a party defendant on the side of the Secretary whose action is challenged by those "adversely" affected.

2. Perkins v. Lukens Steel Co., 1940, 310 U.S. 113, 128, 60 S.Ct. 869, 877, 84 L. Ed. 1108.

3. Endicott Johnson Corp. v. Perkins, 1943, 317 U.S. 501, 507, 63 S.Ct. 339, 342, 87 L.Ed. 424.

4. Perkins v. Lukens Steel Co., supra note 2, 310 U.S. at page 127, 60 S.Ct. at page 877.

5. Id., 310 U.S. at page 127, 610 S.Ct. at page 876.

6. Endicott Johnson Corp. v. Perkins, supra note 3, 317 U.S. at page 507, 63 S.Ct. at page 342.

7. 41 U.S.C.A. §§ 35–39, §§ 41–43 (1952).

8. 5 U.S.C.A. § 1009(a) (1952).

9. 5 U.S.C.A. § 1009(e) (1952).

10. S.Rep.No.1599, May 27, 1952, to accompany S. 2594; cf. Conference Report No. 2352, June 28, 1952.

11. Endicott Johnson Corp. v. Perkins, supra note 3, 317 U.S. at page 509, 63 S. Ct. at page 343.

Re No. 12,331, the appeal of Textile Workers Union of America, CIO, which sought to intervene on the side of the Secretary because it is a labor organization representing certain employees in the woolen and worsted industry and is the exclusive collective bargaining representative as to the employees of six of the appellees. Like the manufacturer-appellant, the Union relies largely upon Rule 24 of the Federal Rules of Civil Procedure. From much of what has been said it may seem that the Union occupies no different status than that of Hayward-Schuster, but the law and its legislative history, as I read it, place the Union in an even less secure position. "If the general law permits prospective bidders to challenge each wage determination of the Secretary in the courts, by a like token all employees affected could obtain judicial review." [12] The Court clearly demonstrates that as to either group, no such power was ever intended by the Walsh-Healey Act, and if not to individual employees, not to their union, either. The wisdom of its prescience may be demonstrated by cases pending in this very court where the effectiveness of the prevailing wage determination has been so far deferred that it ultimately may turn out to be obsolete. Surely, the Fulbright amendment was never designed, nor did Congress in passing it expect, to make a shambles out of the Walsh-Healey Act by admitting hordes of "parties," each with a right of appeal, each engendering further delay. That is why it is limited to those adversely affected and hence does not reach those "who show no more than a mere possible injury to the public." [13] Thus, the Union acquires no status under Rule 24(a), and so far as application of 24(b) is urged, the court is specifically commanded in exercising its discretion, to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

I know that Senator Fulbright, in the legislative footwork involved in passing his amendment, expressed the view that a union in some situations might acquire status under it. See 98 Cong.Rec. 6530 (1952). But comment in debate is not usually taken as a substitute either for committee reports or for what Congress voted. At one point, Congress actually had before it a proposal which would have included employees and labor organizations, but it was not pressed. The sponsors may have concluded that if a union is in a superior economic status, it always can bargain for more than the minimum, while the employer, regardless of its economic power, can not bargain for less. In this very case many of the employees represented by the Union already receive more than the alleged prevailing wage. Let it be remembered that Congress was acting for a *public* purpose, not for private objectives, and it limited review to those "adversely" affected. Whatever the reason for the action taken, we may note from the history that the Fulbright amendment in its original form expressly provided for review of prevailing wage determinations by:

"(1) any person adversely affected or aggrieved thereby;

"(2) any manufacturer of, or regular dealer in, materials, supplies, articles, or equipment purchased, or to be purchased, by the Government from any source; and

"(3) any of the employees of such manufacturer or regular dealer, or any labor organization recognized by such manufacturer or dealer or duly certified by the National Labor Relations Board, as representing such employees." See S.Rep.No. 1599, 82d Cong., 2d Sess. 37 (1952).

Surely it is not without significance that clause (3) of the proposed amendment was entirely omitted when the bill came to the attention of the Senate. 98 Cong. Rec. 6529 (1952).

One more word: a contract of hiring runs between the employer and the employee. Even where a duly constituted

---

**12.** Perkins v. Lukens Steel Co., supra note 2, 310 U.S. at page 131, 60 S.Ct. at page 879.

**13.** Id., 310 U.S. at page 132, 60 S.Ct. at page 879.

bargaining representative sought to enforce a collective bargaining agreement between it and the respondent employer, the Supreme Court ruled that Congress conferred no jurisdiction on the federal courts. See Association of Westinghouse Salaried Employees v. Westinghouse Corp., 1955, 348 U.S. 437, 75 S.Ct. 488, 502. Mr. Justice Reed, concurring, said:

"The reason, I think, that this union cannot recover from the employer in this suit under § 301 [29 U.S. C.A. § 185] is that the claim for wages for the employees arises from separate hiring contracts between the employer and each employee. The union does not undertake to do work for the employer or even to furnish workers. The duty, if any there be, to pay wages to an employee arises from the individual contract between the employer and employee, not from the collective bargaining agreement." [14]

By analogy, it seems to me that the Union here lacks standing. I would affirm the District Court's orders in both cases.

---

14. Cf. Ferguson-Steere Motor Co. v. Int. Brotherhood of Teamsters' Union, 5 Cir., 1955, 223 F.2d 842.