The H. K. FERGUSON COMPANY, Plaintiff,

v.

NICKEL PROCESSING CORPORATION OF NEW YORK, Defendant.

United States District Court
S. D. New York.
July 5, 1963.

**270**

---

Frank A. Celentano, New York City, by McNutt, Dudley & Easterwood, Washington, D. C., for plaintiff.

Robert M. Morgenthau, U. S. Atty., S.D.N.Y., by Anthony H. Atlas, Asst. U. S. Atty., for defendant.

EDELSTEIN, District Judge.

The H. K. Ferguson Company ("Ferguson"), a subcontractor on a United States Government project, has sued Nickel Processing Corporation of New York, the prime contractor, to recover the balance due under its subcontract. Ferguson has now moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P., or, in the alternative, for an interlocutory summary judgment Fed.R. Civ.P. 56 and the direction of a reference to compute the amount of damages. Since matters outside the pleadings have been presented to the court, Ferguson's motion shall be treated, more properly, as a motion for an interlocutory summary judgment.[1] Also before the court is the motion by the Government pursuant to Rule 24(a)(2) and (b)(2), Fed.R.Civ.P., for leave to intervene herein in order to assert a claim against plaintiff.

On December 14, 1951, the defendant, Nickel Processing Corporation of New York (hereafter called "Nickel") was substituted as the prime contractor on Contract Number GS-OOB(D)-1504, a project for the development and operation of the Government's nickel processing plant at Nicaro, Oriente Province, Cuba. The contract, which was of the "cost-plus-fixed-fee" type provided, *inter alia,* that Nickel was to be reimbursed by the Government for all fees paid to subcontractors.

Pursuant to Contract GS-00B(D)-1504 Nickel and Ferguson entered into a subcontract on May 24, 1956, under which Ferguson was to provide engineering services in connection with the design of the nickel plant. The contract was terminated by mutual consent after 90 percent of Ferguson's work had been completed. Nickel has paid Ferguson the sum of $21,420 for the performance of its engineering services but Nickel alleges that there is a balance of $17,136 still due and owing under the said subcontract. Nickel's affirmative defense is that it is not, in effect, personally liable to Ferguson but that it was acting in a fiduciary capacity for the Government in handling the Government's funds. And pursuant to its role as fiduciary it was obligated to follow the Government's direction not to make any payment to Ferguson. The reason for the Government's instruction is its claim that Ferguson is indebted to it to the extent of $266,265.-96, which the Government alleges arises from Ferguson's reaping excess profits on a previous independent Government subcontract, which was ancillary to a prime

---

1. "Rule 56(c) *Motion and Proceedings Thereon.* The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affi-

davits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." As amended January 21, 1963, effective July 1, 1963.

contract, Number GS-00-BD-1516, dated April 30, 1954, between the Government and the National Lead Company.

■ Ferguson's motion for an interlocutory summary judgment is based on the ground that there is no genuine issue as to any material fact as to Nickel's liability for the balance due. Defendant Nickel claims, however, that a substantial and genuine issue of fact exists concerning the intention of the parties to the subcontract. It is axiomatic that on a motion for summary judgment the court cannot try issues of fact but can only determine whether there are genuine issues of fact to be tried. Once having determined that issues of fact exist, the court must leave those issues for determination at trial. 6 Moore, Federal Practice ¶ 56.15(1) et seq. (2d ed. 1953). It has been said, quite correctly, that the determination of the question of whether or not there exists an "issue of material fact" is not subject to determination by a "rigid or magical formula." 6 Moore, op. cit. supra at 2103.

Nickel contends that it was not the parties' intent that Nickel be liable under the subcontract but that Nickel and Ferguson had an understanding predicated upon a course of conduct that Nickel was to act as mere conduit between Ferguson and the Government without Nickel assuming any personal liability on its part.

■ An examination of the file lends itself, on the one hand, to the inference that Nickel's entry into the subcontract contemplated a personal obligation of performance on its part together with a correlative exposure to corporate liability. On the other hand, the facts in the record do not render the contrary infer-

ence to be unreasonable or unsupportable—that Nickel Processing was an agent, or so-called conduit, for the Government. The facts alleged concerning the parties' intentions are not only disputed but lead to inconsistent inferences in their interpretation. "The facts and circumstances, although in no material dispute as to their actuality, reveal aspects from which inconsistent hypotheses might reasonably be drawn and as to which the minds of reasonable men might differ. The drawing of inferences and the acceptance of hypotheses arising out of the facts are ordinarily attributes that the judicial process has conferred upon the finder of facts." Winter Park Tel. Co. v. Southern Bell Tel. & Tel. Co., 181 F.2d 341 (5th Cir., 1950).

The cases hold also, that in ruling on a motion for summary judgment, all doubts as to the existence of a "genuine issue as to any material fact must be resolved against the moving party." See Empire Electronics Co. v. United States, 311 F.2d 175, 180 (2d Cir., 1962); Toeblman v. Missouri-Kansas Pipe Line Co., 130 F.2d 1016, 1018 (3rd Cir., 1942). And the Supreme Court has recently reminded the district courts that "[s]ummary judgments have a place * * * though as we warned in Poller v. Columbia Broadcasting System, 368 U.S. 464, 473 [82 S.Ct. 486, 7 L.Ed.2d 458] (1961), they are not appropriate 'where motive and intent play leading roles.'" White Motor Co. v. United States, 372 U.S. 253, 259, 83 S.Ct. 696, 700, 9 L.Ed. 2d 738 (1963). From an examination of the file, this court finds that it is not possible to limit itself to but one interpretation of the parties' intentions and that there is a genuine issue of fact concerning the interpretation of the contract.[2]

2. This question of interpretation of the contract is relevant also to Ferguson's claim that there is no privity between it, a subcontractor, and the Government, and that, further, a subcontractor can maintain no action by the Government and vice versa. See United States v. Driscoll, 96 U.S. 421, 24 L.Ed. 847 (1897); Mer-

ritt v. United States, 267 U.S. 338, 45 S. Ct. 578, 69 L.Ed. 643 (1925); Herfurth, Inc. v. United States, 89 Ct.Cl. 122 (1939); Nickel v. Pollia, 10 Cir., 179 F. 2d 160 (1950). Despite the pertinency of this proposition, there is an arguable question of fact in this case as to whether the signature of the Government con-

Cf. Reines Distributors, Inc. v. Admiral Credit Corp., 2d Cir., 319 F.2d 609 (1963). Accordingly, the plaintiff's motion for interlocutory summary judgment is denied.

The Government seeks leave to intervene as of right pursuant to Rule 24(a)(2) and permissive intervention under Rule 24(b)(2). Under Rule 24(a)(2) the Government urges that it will be bound by a judgment in Ferguson's action against Nickel Processing since it has a pecuniary interest in this suit as a result of its agreement to pay all fees to subcontractors, and it is for such fees that Ferguson sues. See Sam Fox Publishing Co. v. United States, 366 U.S. 683, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961); Atlantic Refining Co. v. Standard Oil Co., 113 U.S.App.D.C. 20, 304 F.2d 387 (1962); International Mortg. & Inv. Corp. v. Von Clemm, 301 F.2d 857 (2d Cir., 1962); Textile Workers Union v. Allendale Co., 96 U.S.App.D.C. 401, 226 F.2d 765 (1955), cert. denied sub. nom. Allendale v. Mitchell, 351 U.S. 909, 76 S. Ct. 699, 100 L.Ed. 1444 (1955). And in addition to being bound by the judgment the Government is concerned that the representation of its interest by Nickel Processing "is or may be inadequate." Fed.R.Civ.P. 24(a)(2).

■ The Government has advanced what appears to be a novel interpretation of this rule. The Government's theory of inadequate representation is not founded on the conventional concern that the defendant's representation of the Government's interest in the litigation will be inadequate, "but rather on the view that the Government has defenses to Ferguson's action or rather to the entry of judgment in its favor," not available to Nickel.[3] It thus appears that the Gov-

ernment does not really seek to defend against Ferguson's claim but seeks intervention for the sole purpose of asserting its claim for excess profits against Ferguson arising out of Contract Number GS–00B(D)–1516, which is not the subject of the present suit. The Government has failed to demonstrate how this inadequate representation will occur. Despite the Government's allegation of inadequate representation it is clear that its interest in Nickel's defense cannot receive any better legal representation if it is permitted to intervene since the United States Attorney has already appeared as counsel for Nickel in this case under an arrangement between the Government and Nickel.

In E. I. Du Pont De Nemours & Co. v. Lyles & Lang Const. Co., 219 F.2d 328 (4th Cir., 1955), cert. denied, 349 U.S. 956, 75 S.Ct. 882, 99 L.Ed. 1280 (1954), the Government, although it did not seek to counterclaim, sought to intervene in a suit brought by a subcontractor against a Government prime contractor who was, as here, represented by the Department of Justice. In denying motions by the Government to be substituted as a party defendant, Fed.R.Civ.P. 25(c) or, in the inernative, to intervene, the court stated that "there was manifestly no need for it" and went on to say:

"There is no reason to think that the attorneys of the Department of Justice representing the defendant would have acted differently or that the results in the case would have been in any respect different, if the United States had been made a party of record. * * * [T]here was no reason to think that the representation of the interest of the United States by defendant, represented by the attorneys of the Department of

---

tracting officer on the subcontract constitutes an independent assent and acceptance of the contract's terms. If so, the usual rule denying privity to a Government subcontractor relationship may not be controlling here. This question is left for determination to the trial court.

3. Government's Memorandum of Law, p. 6. Rule 24(a)(2) reads: " * * * when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant is or may be bound by a judgment in the action."

Justice, was or might be inadequate." Id. at 332–333.

The contention that the Government should be allowed to intervene as of right because an "element of the public interest is involved" is unpersuasive and is not supported by the Government's citation of the cases of S. E. C. v. United States Realty & Improvement Co., 310 U. S. 434, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940); Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259 (1892) and Plitt v. Hofferbert, 125 F.Supp. 809 (D.Md.1955). The Stanley case involved an action of trespass to try title to a United States military reservation brought originally against Army officers as individual defendants. Since the suit involved title to the property of the United States, the formal entry of the United States Attorney in the suit was required to protect adequately the United States interest in its own lands. The authority of Stanley v. Schwalby is further impaired by the fact that that venerable decision antedated the enactment of the Federal Rules of Civil Procedure and does not bear upon the interpretation of Rule 24 with regard to intervention. And S. E. C. v. United States Realty & Improvement Co. does not support the Government's position since therein the S. E. C. was permitted to intervene for the purpose of asserting that the proceeding should have been brought under a different chapter of the Bankruptcy Act. It is clear that the S. E. C.'s claim could not have been asserted against the litigants in an independent action and that intervention was then necessary. See Note, Federal Intervention in Private Actions Involving the Public Interest, 65 Harv.L.Rev. 319, 324–325 (1951); Berger, Intervention by Public Agencies in Private Litigation in the Federal Courts, 50 Yale L.J. 65 (1940).

Plitt v. Hofferbert, supra, is equally inapposite with relation to the Government's intervention claim. First, it is evident that since the Plitt case involved a civil action in the district court for the refund of internal revenue taxes erroneously and illegally collected, the district court had jurisdiction to entertain the action against the Government as defendant. 28 U.S.C. § 1346(a)(1). Thus, the Government's entry as "intervenor" did not mask its true posture in the case as a defendant since the recovery of any taxes deemed to be illegally collected would have operated directly upon the United States Treasury and would have been a recovery against the United States. Larson v. Domestic & Foreign Corp., 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); United States v. Emery, Bird, Thayer Realty Co., 237 U.S. 28, 35 S.Ct. 499, 59 L.Ed. 825 (1914).

But the jurisdictional problem in this case is quite different than that presented in tax refund suits. The Government herein admits what is evident from the language of the Tucker Act, 28 U.S.C. § 1346(a)(2), that it cannot enter the case under the appellation of defendant. Since this is not a tax refund case, Ferguson's claim of $17,136 would oust the court of jurisdiction as Ferguson's claim exceeds the $10,000 jurisdictional maximum amount which can be asserted as a claim against the Government in a suit in the district court. See 28 U.S.C. § 1346(a)(2).[4] E. I. Du

4. 28 U.S.C. § 1346. United States as defendant.

"(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

"(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws;

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liqui-

Pont De Nemours & Co. v. Lyles and Lang Const. Co., supra, 219 F.2d at 332 (dictum). What the Government is attempting to accomplish by being baptized an "intervenor," is to acquire a defendant's status and a right to assert a separate claim against the plaintiff without having to assume the correlative obligations and exposures of a defendant. The court has not found any authority which supports the grant to the Government of such an unusual and amorphous litigation status. This matter does not involve the national interest or the interest of competing states so as to require the intervention of the United States in an advisory or representative capacity, such as was the situation in Florida v. Georgia, 58 U.S. 478, 17 How. 478, 15 L.Ed. 181 (1812). Cf. New York v. New Jersey, 256 U.S. 296, 308, 41 S.Ct. 492, 65 L. Ed. 937 (1921); 28 U.S.C. § 2403 (Granting Government statutory right to intervene when constitutionality of any Act of Congress affecting the public interest is drawn in question.) [5]

Aside from the fact that in Plitt v. Hofferbert the Government's status was really that of defendant—a status not available to the Government here—another basis for distinguishing the Plitt case is that the claim sought to be asserted by the Government therein related to jeopardy assessments for identical taxable years for which the taxpayer had brought an action in the Tax Court contesting alleged deficiencies, and an action in the District Court for a refund. Thus, there was no problem in Plitt, as there would be here, of the entry of a new party to assert an entirely new cause of action. Nickel has no standing in this litigation to present the Government's claim for excess profits against Ferguson, and a judgment on the merits of the Ferguson-Nickel litigation, to which the Government is not a party, would not bind the Government in subsequent litigation on its claim for excess profits against Ferguson. Sam Fox Publishing Co. v. United States, supra; Sutphen Estates v. United States, 342 U.S. 19, 21, 72 S. Ct. 14, 96 L.Ed. 19 (1951); Atlantic Refining Co. v. Standard Oil Co., supra.

dated or unliquidated damages in cases not sounding in tort."

5. There is authority which recognizes that in private litigation the public interest is often affected without receiving adequate consideration and that Government intervention to secure such representation should be allowed. In The Schooner Exchange v. McFaddon, 11 U.S. 116 (7 Cranch), 3 L.Ed. 287 (1812) the court permitted the Attorney General to file a "suggestion" that a naval vessel of a friendly foreign nation was not subject to the jurisdiction of an American court, in an action by United States citizens claiming title to the ship. And in Florida v. Georgia, supra, the United States was made a party to a boundary dispute both as the owner of the lands involved and as representative of the interests of all the states. The Government was allowed to introduce evidence and to argue the facts and applicable law, but was denied the full status of a party since it was thought its sovereign immunity prevented any judgment for or against it from being conclusive. In New York v. New Jersey, 256 U.S. 296, 308, 41 S.Ct. 492, 65 L.Ed.

937 (1921), the Government was allowed to intervene in an action to enjoin New Jersey Sewage Commission from polluting public waters, but withdrew upon stipulation that its interests would be protected.

Additionally, 28 U.S.C. § 2403 provides:

"Intervention by United States; constitutional question.

"In any action, suit or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality."

The fact that the excess profits issue is extraneous to the Ferguson-Nickel litigation would obviously preclude a judgment in that case from having res judicata or collateral estoppel effect as to the excess profits cause of action. See Developments in the Law—Res Judicata, 65 Harv.L.Rev. 818, 835–839 (1952).

The Government has not demonstrated that it should be permitted to intervene as of right pursuant to Rule 24(a)(2), as it will not be bound by a judgment and its interest is being adequately represented.

█ Nor is the Government entitled to permissive intervention under Rule 24(b)(2) on the ground that its "claim or defense and the main action have a question of law or fact in common." [6] Ferguson's suit against Nickel is to recover the unpaid balance due under a contract between these two parties. The Government is seeking leave to intervene herein in order to assert a claim against Ferguson based upon another contract between Ferguson and National Lead, Nickel's parent corporation. The Government's claim, as stated above, is to recover the excess profits which it alleges that Ferguson made on its subcontract with National Lead. It is manifest that there is no question of law or fact in common between the main action and the Government's proposed claim.

██ Moreover, there is yet another and equally compelling reason for denying the Government's permissive intervention application. To permit the Government to intervene would "unduly delay or prejudice the adjudication of the rights of the original parties," Rule

24(b)(2), by introducing an entirely new and unrelated claim into the proceedings. The policy of encouraging expeditious disposition of litigation by encouraging joinder of claims and parties must yield when the joinder of a claim will introduce new issues into the pending lawsuit with the result that the pending action is unduly delayed or complicated.

In the leading case on the right of an intervenor to counterclaim on a claim in which the defendant has no interest, the Supreme Court stated that "The intervenor was not entitled to come into the suit for the purpose of having adjudicated a controversy solely between it and plaintiff. Issues tendered by or arising out of plaintiff's bill may not by the intervenor be so enlarged. It is limited to the field of litigation open to the original parties." Chandler & Price Co. v. Brandtjen & Kluge, Inc., 296 U.S. 53, 56 S.Ct. 6, 80 L.Ed. 39 (1935). Although this case was decided before the Federal Rules of Civil Procedure became effective, there are many district court decisions which follow the rationale of Chandler, particularly where permissive intervention rather than intervention as of right is involved. See Medd v. Westcott, 32 F.R.D. 25 (N.D.Iowa 1963); True Gun-All Equip. Corp. v. Bishop Int. Engineering Co., 26 F.R.D. 150 (E.D.Ky.1960); Ar-Tik Systems, Inc. v. Dairy Queen, Inc., 22 F.R.D. 122 (E.D.Pa.1958); Kauffman v. Kebert, 16 F.R.D. 225 (W.D.Pa.1954), appeal dismissed, 219 F.2d 113 (3rd Cir., 1955); Reynolds Pen Co. v. Marshall Field & Co., 8 F.R.D. 314 (N.D.Ill.1948); Johnson v. Georgia Power Co., 2 F.R.D. 282 (N.D.Ga.1942);

---

6. Rule 24(b)(2) Fed.R.Civ.P. provides:
   "Upon timely application anyone may be permitted to intervene in an action:
   "* * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common. When a party to an action relies for ground of claim or defense upon any statute or executive order administered by a federal or state governmental officer or

agency or upon any regulation, order, requirement, or agreement issued or made pursuant to the statute or executive order, the officer or agency upon timely application may be permitted to intervene in the action. In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

Lempco Products Inc. v. Simmons, 4 F.R. Serv. 13.12, Case 1 (N.D.Ohio 1941); Staude Mfg. Co. v. Berles Carton Co., 31 F.Supp. 178 (E.D.N.Y.1939). "[T]he court may properly deny or limit *permissive* intervention where it feels that the interposition of counterclaims not related to the matters at issue between the plaintiff and the defendant would unduly delay or complicate the determination of those issues." 4 Moore, Federal Practice ¶24.17 at 135, (2d ed. 1962).

Plaintiff's motion for summary judgment is denied. The motion of the United States to intervene is also denied. So ordered.